# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

EDWARD PINKNEY,

Defendant-Appellant.

FOR PUBLICATION
July 26, 2016
9:00 a.m.

No. 325856
Berrien Circuit Court
LC No. 14-001528-FH

Before: O'BRIEN, P.J., and K. F. KELLY and FORT HOOD, JJ.

O'BRIEN, J.

Defendant, Edward Pinkney, was convicted by a jury of five counts of election forgery, MCL 168.937, but acquitted of six counts of making a false statement in a certificate-of-recall petition, MCL 168.957. He was sentenced as a fourth-offense habitual offender, MCL 769.12, to concurrent prison terms of 30 to 120 months. He appeals as of right his December 15, 2014 judgment of sentence. We affirm.

## I. BACKGROUND

Defendant's convictions arise out of the unsuccessful recall efforts against the mayor of Benton Harbor, James Hightower. Hightower was elected mayor in 2011. Approximately two years after his election, several members of the Benton Harbor City Commission proposed a city income tax. According to Hightower, the primary target of the proposed tax was Whirlpool Corporation. Hightower opposed the proposed tax, but, because enough members of the city commission supported it, the tax was placed on the ballot for the November 2013 election. It did not pass.

On October 23, 2013, James Cornelius filed a petition seeking the recall of Hightower as the mayor of Benton Harbor. According to the petition, Hightower was to be recalled "for voting no to not allow the city income tax to be placed on the 11.5.13 ballot." Carolyn Toliver, the elections administrator for the Berrien County Clerk's Office, testified that the recall petition was accepted, and "a clarity factual hearing" on the petition was scheduled for November 6, 2013. At that hearing, the Berrien County Election Commission approved the recall petition's language.

Defendant and Cornelius had met several years earlier at a Black Autonomy Network Community Organization (BANCO) meeting, and defendant was with Cornelius when he filed

-1-

the recall petition. While Cornelius testified that he did not write the language that appeared on the recall petition, he could not recall who did. According to Cornelius, he sponsored the petition because he was a resident of Benton Harbor. Defendant, on the other hand, was a resident of Benton Township. After the recall petition's language was approved, Cornelius, defendant, and several other individuals circulated recall petitions in hopes of obtaining the statutorily required amount of signatures, which was determined to be 393. See MCL 168.955.

On January 8, 2014, defendant returned to the Berrien County Clerk's Office with a stack of signed recall petitions, but Toliver was unable to accept the recall petitions from anyone but the sponsor, i.e., Cornelius. Consequently, defendant contacted Cornelius, Cornelius came to the clerk's office and submitted the signed recall petitions to Toliver that same day. In total, there were 62 signed petitions containing 728 signatures submitted on January 8th. While more than 300 of the submitted signatures were disqualified for various reasons, 402 signatures were certified by Toliver. Thus, the recall petitions were accepted, and a recall election was scheduled for May 6, 2014.

But, it was never held. After Toliver called for the recall election, Hightower raised concerns with her regarding the authenticity of the dates on the recall petitions that were submitted. Detective-Sergeant David Zizkovsky with the Berrien County Sheriff's Department took possession of the 62 recall petitions and studied them for irregularities. Specifically, Zizkovsky identified several dates next to corresponding signatures that appeared to have been altered. Consequently, he took the 62 petitions to the Michigan State Police Crime Laboratory, and he and Detective-Sergeant Mark Goff, a forensic document examiner with the laboratory, who was admitted "as an expert regarding opinions in the area of forensic document examination" at trial, decided to examine ten recall petitions in detail.

Of the ten recall petitions that were examined, five are of significance, and they are numbered in the record as petitions 1, 6, 18, 19, and 38. Each of these petitions was circulated and signed by defendant. Specifically, Goff testified that each were examined using photomicroscopy, which he described as "tak[ing] pictures through microscopes," and a "Video Spectral Comparator," which he described as "a flashlight with a group of colored lenses and then some more filters that filer out that light." Using this equipment, Goff was able to look for differences in ink color and variations in the type of pen used. Goff also used an electrostatic detection device, which he testified "detects impression in paper." As it relates to petition 1, Goff expressed concerns over the authenticity of the dates on lines 2 through 6. Specifically, it appeared as though the dates were originally written as November 8, 2013, but subsequently changed to November 9, 2013. This determination was based on a change in ink color, i.e., from a black ink with a reddish hue to a dark black ink, and a difference in the burr striations. As it relates to petition 6, Goff expressed concerns over the authenticity of the dates on lines 1 and 2. Specifically, it appeared as though the dates were originally written as November 7, 2013, but subsequently changed to November 9, 2013. Again, this was determined based on a change in ink color, i.e., from one red ink to a different red ink. As it relates to petition 18, Goff expressed concerns over the authenticity of the dates on lines 5 and 6. Specifically, it appeared as though the dates were originally written as November 8, 2013, but subsequently changed to November 18, 2013. According to Goff, the "1" in "18" was written with a different ink than the remaining numbers in "11-18-2013." As it relates to petition 19, Goff expressed concerns over the authenticity of the dates on lines 5 through 10. Specifically, it appeared as though the dates were

originally written as November 8, 2013, but subsequently changed to November 18, 2013, in the same fashion as those on petition 18. Finally, as it relates to petition 38, Goff expressed concerns over the authenticity of the dates on lines 1 through 12. Specifically, it appeared as though the dates were originally written as November 8, 2013, for lines 1 through 4, but subsequently changed to November 18, 2013, and for lines 5 through 12, but subsequently changed to November 28, 2013. Again, the "1" in "18" and the "2" in "28" were written with a different ink than the remaining numbers in the dates. Goff also testified that he was able to find impressions from lines 6 through 10 on petition 19, i.e., five of the six lines that were altered, on petition 38, which he described as an indication that petition 38 was underneath petition 19 when the alterations at issue were made. Additionally, Zizkovsky testified that between March 29, 2013, and April 13, 2014, he watched a news story that included still photographs of the recall petitions, including petition 38. In the still photographs of petition 38, Zizkovsky noticed, the dates were written as November 8, 2013, not November 18, 2013, as they were when they were examined.

As it turns out, these alterations to the dates proved crucial. The signatures on these recall petitions remained valid for only 60 days. See MCL 168.961(2)(d). That is, if the signers signed the recall petitions more than 60 days before they were filed, their signatures would be deemed invalid. The parties agree that the 60-day time period commenced in this case on November 9, 2013. Thus, it appeared, the alterations discussed above were made in an attempt to validate otherwise invalid, untimely signatures. Numerous individuals who signed the recall petitions were called to testify, but they largely testified that they did not recall whether they or someone else was responsible for the alterations to the dates.

The record reflects that defendant was familiar with the recall-petition procedures, including the applicable time limitations such as the 60-day rule. According to Toliver, defendant had sponsored recall petitions for three members of the Benton Harbor School Board in September 2013, had received multiple information packets outlining the applicable time limitations such as the 60-day rule, and had been explained the applicable time limitations such as the 60-day rule when he received the information packet on each occasion. The prosecution also presented the testimony of Sharon Tyler, the Berrien County Clerk, who oversees Toliver. According to Tyler, between August and October 2014, defendant submitted 12 recall petitions against her in connection with what she described as the "recall petition drive" against Hightower.

Defendant was eventually charged with five counts of election forgery, MCL 168.937, and six counts of making a false statement in a certificate-of-recall petition, MCL 168.957. At trial, the prosecution presented evidence largely consistent with the testimony described above. After his motion for a directed verdict was denied, defendant presented the testimony of Marquette Coates, Tamara Jude, and Quacy Roberts. Coates, Jude, and Roberts each testified that a woman by the name of Venita Campbell altered the dates on the recall petitions in their presence. Each explained that they did not disclose this information to law enforcement prior to trial because they "didn't trust the police," "don't mess with the police," were "afraid of" the police, or had other bad experiences with law enforcement.

Defendant also testified on his own behalf. He admitted that he circulated 33 of the 62 petitions that were submitted; that he was familiar with the recall-petition procedures, including

the 60-day time period; that he was the founder and president of the BANCO chapter in Benton Harbor; that he has a radio show that involves various political issues; that he was a leader in objecting to the Harbor Shores Development and in speaking out against Whirlpool; that he regularly speaks at public meetings and other engagements; and that he was not liked by some people. He denied, however, altering the dates on the recall petitions in any way, that he had any motive to alter the dates on the petitions, and that he was the leader in the effort to recall Hightower.

Instead, he claimed, Venita Campbell was the driving force behind the recall movement. While he admitted that she did not sign or circulate any petitions, he claimed that she was, indeed, the recall campaign's leader. "Her job," defendant testified, "was to check and make sure [that the individuals who signed a petition] were registered voters, and also to check the double signatures." At the end of each week, defendant explained, he would provide the completed petitions to Campbell. On January 3, 2014, according to defendant, Campbell brought the petitions that he had circulated to defendant's home for defendant to sign. Campbell then apparently kept all the petitions until January 7, 2014, when she turned them over to Roberts, who turned them over to defendant the following day. Without examining the petitions, defendant took them to the clerk's office for filing, and, once Cornelius was present, the petitions were filed.

In response, the prosecution called two rebuttal witnesses: Toliver and Zizkovsky. Toliver testified that she was unable to find anyone by the name of "Venita Campbell" in the "Secretary of State records" that matched defendant's description of her, which included that she was in her late twenties. Zizkovsky similarly testified that the name "Venita Campbell" had not been mentioned throughout the entirety of his investigation in this matter. He also conducted searches using "TLO," "a company that law enforcement uses and it is controlled by TransUnion, who is one of the people that monitor credit," "White Pages," and "Been Verified" but was unable to find anyone matching defendant's description of Campbell, according to his testimony. It is worth noting that "Venita Campbell, Benton Harbor, Michigan, 49022" was included on defendant's witness list.

After an eight-day trial, defendant was subsequently convicted by a jury and sentenced as described above. This appeal followed. On appeal, defendant unsuccessfully moved for bond pending appeal, *People v Pinkney*, unpublished order of the Court of Appeals, entered August 4, 2015 (Docket No. 325856), unsuccessfully moved for reconsideration of that order, *People v Pinkney*, unpublished order of the Court of Appeals, entered September 8, 2015 (Docket No. 325856), unsuccessfully applied for leave to appeal this Court's order denying bond, *People v Pinkney*, ___ Mich ___; ___ NW2d ___ (2015), and unsuccessfully moved to remand this matter for a hearing pursuant to *People v Ginther*, 390 Mich 436, 442-443; 212 NW2d 922 (1973), *People v Pinkney*, unpublished order of the Court of Appeals, entered October 23, 2015 (Docket No. 325856). Additionally, while this matter was pending on appeal, this Court granted the American Civil Liberties Union of Michigan's motion to file an amicus brief, *People v Pinkney*, unpublished order of the Court of Appeals, entered December 10, 2015 (Docket No. 325856), the Detroit/Michigan Chapter of the National Lawyers Guild's motion to file an amicus brief, *People v Pinkney*, unpublished order of the Court of Appeals, entered January 4, 2016 (Docket No. 325856), and the American Civil Liberties Union of Michigan's motion to participate in oral

argument, *People v Pinkney*, unpublished order of the Court of Appeals, entered April 13, 2016 (Docket No. 325856).

## II. ANALYSIS

On appeal, defendant argues that his convictions must be reversed for four reasons. First, defendant argues that his convictions must be reversed because MCL 168.937 does not create the substantive offense of election forgery. Second, he argues that his convictions must be reversed because the prosecution presented insufficient evidence to support his convictions. Third, defendant argues that his convictions must be reversed because the trial court erroneously instructed the jury that it could convict him under an aiding-and-abetting theory. Finally, defendant argues that his convictions must be reversed because other-acts evidence was admitted against him in violation of MRE 404(b), his constitutional right to free speech, and his constitutional right to due process. Because we disagree in each respect, we affirm defendant's convictions and sentence.

## A. MCL 168.937

As stated above, defendant argues on appeal that his convictions must be reversed because MCL 168.937 does not create the substantive offense of election forgery. We disagree.

Defendant was convicted of election forgery under MCL 168.937, which provides as follows:

Any person found guilty of forgery under the provisions of this act shall, unless herein otherwise provided, be punished by a fine not exceeding $1,000.00, or by imprisonment in the state prison for a term not exceeding 5 years, or by both such fine and imprisonment in the discretion of the court.

Whether MCL 168.937 creates the substantive offense of election forgery is an issue that has yet to be resolved by this Court in a published opinion or by our Supreme Court. It has, however, been resolved by a panel of this Court in an unpublished opinion. In *People v Hall*, unpublished opinion per curiam of the Court of Appeals, issued October 23, 2014 (Docket No. 321045), p 6, a panel of this Court, when faced with determining "whether MCL 168.937 can be fairly read as proscribing the broad offense of forgery that pertains to the falsifying a document governed by the Michigan election law, or whether it is merely a penalty provision for the specific forgery offenses set forth in other provisions of the Michigan election law," held "that MCL 168.937 is not merely a penalty provision, but rather creates a substantive offense of forgery." While this Court's *Hall* decision was reversed on other grounds as discussed below, we nevertheless find the reasoning as it relates to this specific issue persuasive, see *People v Kloosterman*, 296 Mich App 636, 641, n 2; 823 NW2d 134 (2012), citing MCR 7.215(C)(1); *People v Green*, 260 Mich App 710, 720, n 5; 680 NW2d 477 (2004) (stating that "[u]npublished opinions are not binding authority, but they may be persuasive."), and therefore conclude that MCL 168.937 does, in fact, create the substantive offense of election forgery.

We review issues of statutory construction de novo. *People v Dowdy*, 489 Mich 373, 379; 802 NW2d 239 (2011). "The cardinal rule of statutory construction is to discern and give effect to the intent of the Legislature." *Id*. (citation and internal quotation marks omitted). "In doing so, we focus on the plain language of the statute and, if the statute is unambiguous, must

conclude that the Legislature intended the meaning clearly expressed[.]" *People v Lyon*, 310 Mich App 515, 517; 872 NW2d 245 (2015) (citations and internal quotation marks omitted; alterations by the *Lyon* Court). That is, if the language of a statute is unambiguous, judicial construction is not required or permitted. *People v Uribe*, 310 Mich App 467, 477; 872 NW2d 511 (2015). Ultimately, "[c]ourts must construe a statute in a manner that gives full effect to all of its provisions." *Dowdy*, 489 Mich at 379.

A variety of statutory-construction rules support the conclusion reached in *Hall*. As the *Hall* panel correctly recognized, the purpose of the Michigan election law, MCL 168.1 *et seq.*, is to regulate primaries and elections, provide for the "purity" of the election process, and guard against abuse. *Hall*, unpub op at 6, citing 1954 PA 116. That purpose is served by interpreting MCL 168.937 as a provision creating the substantive offense of election forgery, not as merely a penalty provision, because it ensures fairness and purity in the election process, i.e., by expressly and specifically prohibiting all election forgery. *Id*. at 7, citing *People v Gills*, 474 Mich 105, 114-115; 712 NW2d 419 (2006). In fact, under defendant's interpretation of MCL 168.937, only "[a]n inspector of election, clerk, or other officer or person having custody of any record, election list of votes, affidavit, return, statement of votes, certificates, poll book, or any paper, document, or vote of any description," MCL 168.932(c), or "[a] person who is not involved in the counting of ballots as provided by law and who has possession of an absent vote ballot mailed or delivered to another person," MCL 168.932(e), could be guilty of election forgery. There is simply nothing, express, implied, or otherwise, in the Michigan election law to support the idea that the Legislature intended such a peculiar result. *People v Stephan*, 241 Mich App 482, 503; 616 NW2d 188 (2000) (explaining that this Court will not read anything into a statute that is "not plainly expressed" by the Legislature). Furthermore, interpreting MCL 168.937 in that manner would create an absurd result, i.e., permitting individuals who do not meet the definitions set forth in MCL 168.932 to commit common-law forgery in the election process without recourse under the Michigan election law. *People v Lewis*, 302 Mich App 338, 341-342; 839 NW2d 37 (2013), quoting *People v Tennyson*, 487 Mich 730, 741; 790 NW2d 354 (2010) (" 'Statutes must be construed to prevent absurd results.' "). Additionally, as the *Hall* panel also correctly recognized, interpreting MCL 168.937 as merely a penalty provision would render that statutory provision mere surplusage. *Hall*, unpub op at 7. That is, because MCL 168.935 sets forth the penalties for a felony conviction under the provisions of the Michigan election law, interpreting MCL 168.937 as also setting forth the penalties for a felony, albeit a specific one, adds nothing to statutory scheme at issue. *Id*. " 'This Court must avoid a construction that would render any part of a statute surplusage or nugatory.' " *Id*., quoting *People v Redden*, 290 Mich App 65, 76-77; 799 NW2d 184 (2010) (citation and internal quotation marks omitted). Stated differently, "[c]ourts *must* construe a statute in a manner that gives full effect to *all* of its provisions." *Dowdy*, 489 Mich at 379 (emphasis added). If we were to accept defendant's argument and interpret MCL 168.937 as merely a penalty provision, it would have no effect in light of MCL 168.935. We are forbidden from doing so.

Relatedly, defendant also argues that his convictions must be reversed because, if MCL 168.937 does create the substantive offense of election forgery, it violates the vagueness doctrine and the rule of lenity. We disagree.

Constitutional issues, including the constitutionality of a statute, are reviewed de novo. *People v Sadows*, 283 Mich App 65, 67; 768 NW2d 93 (2009). "A statute is presumed

-6-

constitutional, and the party challenging the statute has the burden of proving its invalidity." *Id*. (citations omitted). Under the vagueness doctrine, a statute may be challenged as unconstitutionally vague if it (1) "is overbroad and impinges on First Amendment freedoms," (2) "does not provide fair notice of the conduct proscribed," or (3) "is so indefinite that it confers unstructured and unlimited discretion on the trier of fact to determine whether the law has been violated." *People v Noble*, 238 Mich App 647, 651; 608 NW2d 123 (1999). However, a statute is not void for vagueness if "its meaning can fairly be ascertained by reference to judicial interpretations, the common law, dictionaries, treatises, or the commonly accepted meanings of words." *Id*. 652. Under the rule of lenity, "courts should mitigate punishment when the punishment in a criminal statute is unclear." *People v Johnson*, 302 Mich App 450, 462; 838 NW2d 889 (2013) (citation and internal quotation marks omitted). However, the rule "applies only in the circumstances of an ambiguity, or in the absence of any firm indication of legislative intent." *People v Wakeford*, 418 Mich 95, 113-114; 341 NW2d 68 (1983).

Applying those rules to the instant matter, we conclude that MCL 168.937 does not violate the vagueness doctrine or the rule of lenity. Stated simply, the meaning of MCL 168.937 can be fairly ascertained by reference to the common law. *Noble*, 238 Mich App at 651. "The common law definition of 'forgery' is 'a false making . . . of any written instrument with the intent to defraud.' " *People v Nasir*, 255 Mich App 38, 42, n 2; 662 NW2d 29 (2003) (citation and internal quotation marks omitted). Thus, it is not unconstitutionally vague. Additionally, MCL 168.937 is unambiguous for similar reasons, and one can easily discern a firm indication of the Legislature's intent. As stated above, "[t]he Michigan election law . . . was enacted for the stated purpose of, among other things, regulating primaries and elections; providing for the 'purity' of the election process; and guarding against 'the abuse of elective franchise.' " *Hall*, unpub op at 6, quoting 1954 PA 116. Thus, MCL 168.937 does not violate the rule of lenity either.

This conclusion is also supported by our Supreme Court's recent decision in *People v Hall*, ___ Mich ___; ___ NW2d ___ (2016). In that case, the issue before our Supreme Court was "whether defendant may be bound over to circuit court on felony charges for committing forgery under MCL 168.937, or whether the prosecution was limited to proceeding with misdemeanor charges under MCL 168.544c(8)(a) for signing the petitions 'with a name other than his . . . own.' " *Id*. at ___; slip op at 1. While our Supreme Court did not specifically address whether MCL 168.937 created the substantive offense of election forgery, *id*. at ___; slip op at 9 (stating that "defendant concedes that this statute creates the substantive offense of forgery . . . ."), it did specifically address whether MCL 168.937 provided sufficient notice to survive a due-process challenge. *Id*. at ___; slip op at 14-17. It concluded that it did, explaining that "prosecution under MCL 168.937 did not violate 'fundamental elements of fairness' given the Court of Appeals' holding that MCL 168.937 is a substantive offense and given that the plain text of the statute informed him he could be subject to felony charges if he committed election law forgery . . . ." *Id*. at ___; slip op at 16-17 (citation omitted). Thus, while our Supreme Court's decision in *Hall* does not specifically address the issue of whether MCL 168.937 creates a substantive offense, it certainly does not compel a conclusion other than the one that we have reached in this case.

-7-

## B. SUFFICIENCY OF THE EVIDENCE

Defendant also argues on appeal that his convictions must be reversed because the prosecution presented insufficient evidence to support his convictions. Specifically, he claims that the jury could not have concluded that he altered the dates on the recall petitions with the requisite intent beyond a reasonable doubt. We disagree.

This Court reviews a defendant's challenge to the sufficiency of the evidence de novo. *People v Cline*, 276 Mich App 634, 642; 741 NW2d 563 (2007). "In determining whether the prosecutor has presented sufficient evidence to sustain a conviction, an appellate court is required to take the evidence in the light most favorable to the prosecutor." *People v Bosca*, 310 Mich App 1, 16; 871 NW2d 307 (2015) (citation and internal quotation marks omitted). "The standard of review is deferential and this Court 'is required to drawl all reasonable inferences and make credibility choices in support of the jury verdict.' " *People v Powell*, 278 Mich App 318, 320; 750 NW2d 607 (2008), quoting *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). In this case, because the Michigan election law does not define the substantive offense of election forgery, we turn to the common law definition of forgery, *People v Riddle*, 467 Mich 116, 125; 649 NW2d 30 (2002), which is, as stated above, "a false making . . . of any written instrument with the intent to defraud," *Nasir*, 255 Mich App at 42, n 2. "Because intent may be difficult to prove, only minimal circumstantial evidence is necessary to show a defendant entertained the requisite intent." *People v Harverson*, 291 Mich App 171, 178; 804 NW2d 757 (2010); see also *People v Chelmicki*, 305 Mich App 58, 66; 850 NW2d 612 (2014). Indeed, circumstantial evidence, alone, may be sufficient to prove all elements of an offense. *People v Unger*, 278 Mich App 210, 223; 749 NW2d 272 (2008). Relatedly, "[a]lthough motive is not an essential element of the crime, evidence of motive in a prosecution . . . is always relevant." *Id*. When a defendant's "sufficiency argument is couched in terms of the trial court's having denied his motion for a directed verdict," "we only consider the evidence presented by the prosecution up to the time the motion was made." *Powell*, 278 Mich App at 320, n 1, citing *People v Gould*, 255 Mich App 79, 86; 570 NW2d 140 (1997).

Applying those rules to this case, we conclude the prosecution presented sufficient evidence for the jury to find defendant guilty of violating MCL 168.937 beyond a reasonable doubt prior to defendant's directed-verdict motion. The evidence presented at trial portrayed defendant as the leader in the recall efforts at issue. Defendant, who had previously sponsored several recall campaigns in Benton Harbor in the past, asked Cornelius to sponsor this specific recall petition because he was a Benton Harbor resident; successfully obtained the recall petitions from Toliver; circulated 33 of the 62 recall petitions that were submitted; advocated on behalf of the recall campaign at city commission meetings, BANCO meetings, and generally throughout the community; attempted to file the 62 recall petitions at issue; and demonstrated animosity towards Hightower in various ways during the time period in issue. Having filed several recall petitions in the past, defendant was admittedly familiar with the 60-day rule regarding the signatures' validity, and he was undisputedly in control of the petitions prior to attempting to file them on his own as well as when Cornelius filed them in his presence. The testimony that was presented indicated that the only dates altered on these recall petitions were those that fell beyond the 60-day time period, November 7th and 8th. Those dates were altered to instead reflect November 9th, 18th, or 28th, all dates that fell within the 60-day time period.

-8-

This evidence, while circumstantial, constituted sufficient evidence to support the jury's guilty verdicts when viewed in a light most favorable to the prosecution.

Defendant's primary argument on appeal relies on his claim that he was merely found in possession of the altered recall petitions, not actually responsible for the alterations themselves. But, a review of the record reflects that defendant's convictions were supported by substantially more than his mere possession of the recall petitions. As discussed above, the evidence presented portrayed defendant, who was familiar with the recall-petition process, as having motive to alter the recall petitions to bring them within the 60-day time period. While having the forged recall petitions, alone, may have been insufficient to support a conviction under MCL 168.937, this possession of the forged recall petitions, coupled with his demonstrated animosity against Hightower, his knowledge of the 60-day rule, and his motive to alter the dates to bring them within the 60-day time period, constituted sufficient evidence, when viewed in a light most favorable to the prosecution, *Bosca*, 310 Mich App at 16, for a rational trier of fact to find defendant guilty beyond a reasonable doubt of violating MCL 168.937.

## C. AIDING AND ABETTING

Defendant additionally argues on appeal that his convictions must be reversed because the trial court erroneously instructed the jury that it could convict him under an aiding-and-abetting theory. We disagree.

In order to preserve a challenge to a trial court's decision to give or not give a specific jury instruction for appellate review, a party must object to or request that jury instruction before the trial court. *People v Sabin (On Second Remand)*, 242 Mich App 656, 657-658; 620 NW2d 19 (2000). Defendant did not object to the aiding-and-abetting instruction that he now challenges on appeal. Thus, this issue is unpreserved and reviewed for plain error affecting defendant's substantial rights. *People v Aldrich*, 246 Mich App 101, 124-125; 631 NW2d 67 (2001). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights," "i.e., that the error affected the outcome of the lower court proceedings." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

"A criminal defendant is entitled to have a properly instructed jury consider the evidence against him," *People v Armstrong*, 305 Mich App 230, 239; 851 NW2d 856 (2014) (citation and internal quotation marks omitted), and the jury instructions "must include all the elements of the charged offenses and any material issues, defenses, and theories that are supported by the evidence," *People v McKinney*, 258 Mich App 157, 162-163; 670 NW2d 254 (2003). In short, "[t]he trial court may issue an instruction to the jury if a rational view of the evidence supports the instruction." *Armstrong*, 305 Mich App at 240. "Even if the instructions are somewhat imperfect, reversal is not required as long as they fairly presented the issues to be tried and sufficiently protected the defendant's rights." *Aldrich*, 246 Mich App at 124.

> The general rule is that, to convict a defendant of aiding and abetting a crime, a prosecutor must establish that "(1) the crime charged was committed by the defendant or some third person; (2) the defendant performed acts or gave encouragement that assisted the commission of the crime; and (3) the defendant

intended the commission of the crime or had knowledge that the principal intended its commission at the time that [the defendant] gave aid and encouragement." [*People v Moore*, 470 Mich 56, 67-68; 679 NW2d 41 (2004), quoting *Carines*, 460 Mich at 768 (alterations by the *Moore* Court).]

While it is not necessary that the prosecutor prove the identity of the principal, it is necessary that the prosecutor prove the guilt of the principal. *People v Wilson*, 196 Mich App 604, 611; 493 NW2d 471 (1992); *People v Vaughn*, 186 Mich App 376, 381-382; 465 NW2d 365 (1990). Ultimately, so long as there is evidence that "tend[s] to establish that more than one person committed the crime," the issue of aiding and abetting may be put before the trier of fact. *Vaughn*, 186 Mich App at 382.

Applying those rules to this case, we conclude that the trial court did not err in instructing the jury that defendant could be convicted under an aiding-and-abetting theory. As discussed above, the prosecution presented substantial evidence in support of its theory that defendant had motive to alter the recall petitions in an attempt to bring otherwise-invalid signatures within the requirements of the 60-day rule. The way that the dates on the recall petitions were altered, i.e., changing dates beyond the 60-day time period to within the 60-day time period, certainly supports an inference that the individuals who made those changes had knowledge of the 60-day time period or were told to make the changes according to the same. Assuming that Coates's, Jude's, and Roberts's testimony was true that Campbell did, in fact, alter the dates on the recall petitions, a rational jury could have reasonably concluded that she did so with the intent to defraud. That same jury could also have reasonably concluded that she did so at the aid and encouragement of defendant, who was, again, portrayed as the leader of the recall campaign, who was admittedly familiar with the 60-day rule, and who collected the recall petitions from Campbell. And, because a rational view of the evidence supports finding defendant guilty under an aiding-and-abetting theory, we discern no error with respect to the trial court's decision to issue an aiding-and-abetting instruction. *Armstrong*, 305 Mich App at 239; *McKinney*, 258 Mich App at 162-163.

Relatedly, we also reject defendant's brief argument that reversal is required because his trial counsel was ineffective in failing to object to the aiding-and-abetting jury instruction. To prevail on an ineffective-assistance claim, "a defendant must show that counsel's performance fell below an objective standard of reasonableness, and that the representation so prejudiced the defendant as to deprive him of a fair trial." *People v Pickens*, 446 Mich 298, 303; 521 NW2d 797 (1994); see also *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Seals*, 285 Mich App 1, 17; 776 NW2d 314 (2009) (citation and internal quotation marks omitted). Here, defendant has failed to overcome this presumption of effective assistance. For the reasons set forth above, the evidence supported an aiding-and-abetting jury instruction, and "[f]ailing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

In light of our conclusion that there was sufficient evidence to find defendant guilty beyond a reasonable doubt of violating MCL 168.937, we deem it unnecessary to address in detail whether there was sufficient evidence for a rational jury to find defendant guilty beyond a

reasonable doubt of violating MCL 168.937 under an aiding-and-abetting theory *as well*. The same rationale applies in support of defendant being convicted as either the principal or the aider-and-abettor, and beyond-a-reasonable-doubt proof is not required to support the trial court's decision to give an aiding-and-abetting instruction to the jury. Stated differently, there exist scenarios, including the one at bar, where an aiding-and-abetting instruction may be given despite the fact that the evidence could lend itself to a defendant's guilt as the principal *or* the aider-and-abettor.

## D. OTHER-ACTS EVIDENCE

Finally, defendant argues that his convictions must be reversed because other-acts evidence was admitted against him in violation of MRE 404(b), his constitutional right to free speech, and his constitutional right to due process. We disagree.

A trial court's decision to admit evidence, including other-acts evidence, is reviewed for an abuse of discretion. *Unger*, 278 Mich App at 216; *People v McGhee*, 268 Mich App 600, 609; 709 NW2d 595 (2005). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *Unger*, 278 Mich App at 217. The questions of law involved in the admission of evidence, however, are reviewed de novo. *People v Jones*, 270 Mich App 208, 211; 714 NW2d 362 (2006). Constitutional issues are likewise reviewed de novo. *Sadows*, 283 Mich App at 67.

MRE 404 governs the admission of other-acts evidence. *People v Starr*, 457 Mich 490, 494-495; 577 NW2d 673 (1998). While "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith[,]" "[i]t may . . . be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material[.]" MRE 404(b)(1). There are three requirements for other-acts evidence to be admissible under MRE 404(b)(1): (1) the other-acts evidence must be offered for a proper purpose, i.e., for a purpose other than to show character and action in conformity therewith, (2) the other-acts evidence must be relevant to an issue of fact that is of consequence at trial, and (3) the danger of unfair prejudice must not substantially outweigh the probative value of the other-acts evidence. *People v Steele*, 283 Mich App 472, 479; 769 NW2d 256 (2009). MRE 404(b) is a rule of inclusion, not exclusion. *People v Jackson*, 498 Mich 246, 259; 869 NW2d 259 (2015).

In this case, each of the three requirements set forth above was satisfied. First, the prosecution offered the other-acts evidence at issue in this case—testimony regarding defendant's efforts in a recall campaign against Tyler and testimony regarding defendant's public comments criticizing Hightower, Hightower's "alliance" with Whirlpool, and various other actions—for a proper purpose, i.e., for the purpose of establishing defendant's motive. And, as discussed above, "[a]lthough motive is not an essential element of the crime, evidence of motive in a prosecution . . . is always relevant." *Unger*, 278 Mich App at 223. Evidence is relevant if it has the tendency to make the existence of a fact of consequence more or less probable that it would be without the evidence. MRE 401. The testimony described above had the tendency to make the existence of a fact of consequence more or less probable because it directly addressed defendant's motive in altering or aiding and encouraging the alteration of the dates on the recall

petitions, which was used to prove the identity of the perpetrator. Third, the probative value of the other-acts evidence at issue was not substantially outweighed by the danger of unfair prejudice. "All relevant evidence is prejudicial; it is only unfairly prejudicial evidence that should be excluded." *McGhee*, 268 Mich App 613-614. "Evidence is unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury." *People v Crawford*, 458 Mich 376, 398; 582 NW2d 785 (1998). The evidence at issue here was highly probative. It showed that defendant had a motive to alter the dates on the recall petitions, thus providing evidence of the identification of the perpetrator. While defendant claims that the probative value of this evidence was marginal when compared to the fact "that his political views are not popular with some people in the community," the record simply reflects otherwise. Furthermore, the jury was properly instructed several times that it could only consider the other-acts evidence for motive purposes. "Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors." *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003). Defendant makes no effort to overcome these presumptions.

Defendant does not necessarily challenge, at least with respect to MRE 404(b), the admission of that testimony. Rather, his argument on appeal focuses on the allegedly improper admission of his own cross-examination testimony regarding his political activism unrelated to the recall campaign against Hightower. Specifically, the allegedly improper testimony that he takes issue with includes his testimony about his radio show, his recall efforts in the local community, his speaking engagements across the country, and his search for justice and equality in general. He claims that this testimony was substantively inadmissible, MRE 404(b)(1), and procedurally inadmissible, MRE 404(b)(2). But, it is difficult to discern from the record how this testimony creates a "character-to-conduct" inference. *Jackson*, 498 Mich at 262; see also *People v Mardlin*, 487 Mich 609, 616, n 10; 790 NW2d 607 (2010) (explaining that "MRE 404(b) is not even implicated if the prosecution seeks to introduce logically relevant evidence of other acts performed by the defendant if the evidence does not generate an intermediate inference as to his character."). Furthermore, defendant's argument does not address the fact that jurors are presumed to follow their instructions, and jury instructions are presumed to cure most errors. *Abraham*, 256 Mich App at 279. The trial court specifically and repeatedly instructed the jury that it was not to consider his "stature in the community" or "his activities in relation to the community" in a negative light. Defendant makes no effort to articulate how these and other related instructions were insufficient.

Relatedly, defendant also challenges the trial court's decision to admit the other acts evidence under the First Amendment, claiming that his constitutional rights to free association and speech were infringed upon by the admission of this testimony. While the First Amendment certainly protects citizens' rights to free speech, including speech involving the criticism of public officials and policies, it "does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive of intent." *Wisconsin v Mitchell*, 508 US 476, 489; 113 S Ct 2194; 124 L Ed 2d 436 (1993). Thus, even if we assume that defendant's conduct at issue is entitled to First Amendment protection, it is nevertheless admissible so long as it was relevant, not unfairly prejudicial, and otherwise admissible. And, as stated several times above, this testimony was highly relevant and minimally prejudicial, and defendant has not challenged its admission on any other grounds. Consequently, the admission of other-acts evidence did not violate defendant's First Amendment right to free association and speech.

For similar reasons, we reject defendant's due-process challenge as well. He claims that due process compels reversal in this case because the other-acts evidence at issue was used to show his propensity to commit election forgery. See, e.g., *McKinney v Rees*, 993 F2d 1378 (CA 9, 1993). In order for the admission of other-acts evidence to violate one's constitutional right to due process, "the introduction of this type of evidence [must be] so extremely unfair that its admission violates 'fundamental conceptions of justice.' " *Dowling v United States*, 493 US 342, 352; 110 S Ct 668; 107 L Ed 2d 708 (1990). At issue in this case is what defendant describes as the admission of evidence "not directly related to the recall of Hightower," but the admission of that evidence, alone, simply does not violate the fundamental conceptions of justice discussed in *Dowling*. Indeed, "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh v Mitchell*, 329 F3d 496, 512 (CA 6, 2003). As discussed in great detail above, the evidence presented by the prosecution portrayed defendant as the leader in the recall campaign against Hightower, and the other-acts evidence at issue provided evidence of his motive in altering or aiding and encouraging the alteration of the dates on the recall petitions. Consequently, the admission of other-acts evidence did not violate defendant's constitutional right to due process either.

## C. CONCLUSION

In sum, we conclude that MCL 168.937 does create the substantive offense of election forgery, that the prosecution presented sufficient evidence to support defendant's convictions, that the jury was correctly instructed, and that the trial court did not erroneously admit other-acts evidence. We therefore affirm defendant's convictions and sentence.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Kirsten Frank Kelly
/s/ Karen Fort Hood