# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* LEE, Minors.

UNPUBLISHED
July 25, 2017

No. 331923
Wayne Circuit Court
Family Division
LC No. 15-519844-NA

Before: GLEICHER, P.J., and M. J. KELLY and SHAPIRO, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating his parental rights to the minor children under MCL 712A.19b(3)(b)(*i*), (j), and (k)(*ii*). The court's termination decision was based on testimony from the children's half-sister, LL, who testified that respondent sexually assaulted her in the summer of 2015. Respondent was charged with two counts of criminal sexual conduct; however, the charges were dismissed, ostensibly because LL recanted her testimony. Respondent filed a motion with this Court seeking preemptory reversal or a remand based on LL's recantation. We denied the motion for preemptory reversal, but remanded for the trial court to take testimony from LL and issue a decision on whether respondent should be granted a new trial or other relief on the basis of LL's recantation testimony. *In re Lee Minors*, unpublished order of the Court of Appeals, entered September 21, 2016 (Docket No. 331923). On remand, a hearing referee took testimony from LL and from a child advocate with the Wayne County Prosecutor's office. Thereafter, the referee found that LL's original testimony was credible, that there was no recantation, and that if there was a recantation it was not credible. The referee recommended that respondent not receive a new trial. The trial court affirmed the recommendation. On appeal, respondent raises a number of issues relating to the original decision and the decision on remand. Because the trial court did not err, we affirm.

## I. RECANTATION EVIDENCE

## A. STANDARD OF REVIEW

Respondent argues that the trial court erred by not granting him a new trial or reversing the termination of his parental rights after hearing testimony that LL recanted her allegations of sexual abuse. In conjunction with his argument, he asserts that the trial court abused its discretion by denying his request to treat LL as a hostile witness under MRE 611(d)(3) and by admitting and using the child advocate's testimony in violation of MRE 613. A trial court's decision to grant or deny a motion for a new trial is reviewed for an abuse of discretion. *People v Cress*, 468 Mich 678, 691; 664 NW2d 174 (2003). "An abuse of discretion occurs when the

-1-

trial court chooses an outcome falling outside the range of principled outcomes." *In re COH*, 495 Mich 184, 202; 848 NW2d 107 (2014) (citation and quotation marks omitted). "A trial court's factual findings are reviewed for clear error." *Cress*, 468 Mich at 691. A trial court's decision to admit evidence is also reviewed for an abuse of discretion. *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001).

## B. ANALYSIS

On remand, respondent requested a new trial or other relief based on an affidavit from his lawyer, who averred that two criminal sexual conduct charges against respondent had been dismissed in respondent's criminal case after LL admitted that she fabricated the allegations of sexual abuse and recanted her previous testimony. "For a new trial to be granted on the basis of newly discovered evidence, a defendant must show that: (1) the evidence itself, not merely its materiality, was newly discovered; (2) the newly discovered evidence was not cumulative; (3) the party could not, using reasonable diligence, have discovered and produced the evidence at trial; and (4) the new evidence makes a different result probable on retrial." *Cress*, 468 Mich at 692 (citations and quotation marks omitted). "[W]here newly discovered evidence takes the form of recantation testimony, it is traditionally regarded as suspect and untrustworthy." *People v Canter*, 197 Mich App 550, 559; 496 NW2d 336 (1992). Further, "Michigan courts have expressed reluctance to grant new trials on the basis of recanting testimony." *Id*. at 560. "Whether to grant a new trial on the basis of recanting testimony is a decision committed to trial court discretion." *Id*. "In reviewing the trial court's decision, due regard must be given to the trial court's superior opportunity to appraise the credibility of the recanting witness and other trial witnesses." *Id*. In this case, the referee found no evidence that LL recanted. The referee also reaffirmed its earlier finding that LL was sexually abused. The trial court affirmed this ruling because it did not believe LL's recantation testimony and found that the referee was in the best position to make credibility determinations.

Assuming *arguendo* that LL recanted her testimony at the termination hearing,[1] the trial court did not abuse its discretion in denying the motion for retrial based on the recantation. First,

---

[1] During the proceedings on remand, LL was never directly asked if respondent had sexually abused her, nor was she directly asked if she had told someone that the abuse never happened. Instead, she testified that she told the prosecutor and the victim's advocate that respondent "didn't physically touch me." The following exchange then occurred:

> *The Court*. You got to—you got to speak up louder.
>
> *LL*. He didn't touch me.
>
> *The Court*: Okay
>
> *[Respondent's Lawyer]*. Sexually?
>
> *LL*. Yes.

as recantation testimony, LL's testimony is inherently suspect. See *Canter*, 197 Mich App at 559. Second, the recantation testimony was impeached by the testimony of the victim's advocate, Jamie Buchholtz. According to Buchholtz, LL continuously stated that respondent sexually abused her, but she refused to testify against him. Accordingly, the prosecutor dismissed the criminal sexual conduct charges against respondent. Third, there was also evidence presented regarding LL's motive to recant her previous testimony, despite its truth. LL testified that she felt bad that respondent's parental rights were terminated, and she testified that she did not want respondent to go to jail. Buchholtz testified that LL told her that her mother had said that the children needed their father. The referee found that LL's recantation was not credible. The referee was in a superior position to determine the credibility of LL's original testimony at the termination hearing and the credibility of her recantation testimony on remand. We must defer to these credibility determinations. *Id*. at 560. Given the referee's determination that LL's recantation was not credible, the trial court did not abuse its discretion in denying respondent's motion for a new trial or other relief.[2]

Respondent also argues that the referee erred by refusing to allow his lawyer to ask LL leading questions under MRE 611(d)(3) during the proceedings on remand. He asserts that LL's lack of credibility made her a hostile witness or because her testimony at the original hearing made her hostile to respondent. MRE 611(d)(3) provides, in relevant part, that "[w]hen a party calls a hostile witness, an adverse party or a witness identified with an adverse party, interrogation may be by leading questions." A "hostile witness" is "[a] witness who is biased against the examining party, is unwilling to testify, or is identified with an adverse party." *Black's Law Dictionary* (10th ed), p 1838. The mere fact that LL testified against respondent during the termination hearing does not mean that she remains adverse to his interests in later proceedings. Here, LL's testimony was, in fact, being offered on behalf of respondent and there was nothing in the record to indicate that she was biased against him, unwilling to testify, or that she identified her interests with petitioner. Therefore, the referee did not abuse her discretion by refusing to allow respondent's lawyer to ask leading questions.

---

Based on the record before us, it is unclear whether LL agreed that she told the prosecutor that respondent did not touch her sexually or whether she was stating that respondent did not physically abuse her.

[2] Respondent suggests that LL's recantation, coupled with the lack of other evidence corroborating her original allegations, means that LL's original testimony should be essentially stripped of all credibility. However, a trial court may credit a recanting witness's original testimony should it conclude that the recantation testimony lacks credibility. *Cantor*, 197 Mich App at 560-561. Respondent has presented no evidence suggesting that a victim's testimony that she or he was sexually abused must be corroborated in a termination proceeding, and we note that there is no requirement that an allegation of sexual abuse be corroborated during a criminal prosecution. MCL 750.520h. Accordingly, respondent's arguments as they relate to the need for corroborating evidence are without merit.

Next, respondent contends that the referee erred by admitting Buchholtz's testimony under MRE 613(b), which provides in part:

> Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require. . . .

Evidence admitted under MRE 611 is admissible for impeachment purposes only and not as substantive evidence. See *People v Stanaway*, 446 Mich 643, 692-693; 521 NW2d 557 (1994). Respondent argues that Buchholtz's testimony was improperly considered as substantive evidence against him. We disagree. Buchholtz's testimony—that LL said the abuse happened, but would deny it if forced to testify—was only used to impeach LL's testimony that she told the prosecutor and Buchholtz that respondent did not touch her sexually. By crediting Buchholtz's impeachment testimony, the court was not considering it for substantive purposes. Instead, the court essentially concluded that LL's recantation testimony lacked credibility because it was successfully impeached.

In sum, the trial court did not abuse its discretion by denying the motion for new trial premised on LL's recantation testimony. Nor did the court abuse its discretion in denying respondent's request to treat LL as a hostile witness under MRE 611(d)(3) or by crediting Buchholtz's impeachment testimony under MRE 611.

## II. STATUTORY GROUNDS

Respondent next argues that, in light of LL's recantation testimony, there is insufficient evidence to terminate his parental rights under MCL 712A.19b(3)(b)(*i*), (j), (g), and (k)(*ii*).[3] "To terminate parental rights, a trial court must find that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been proved by clear and convincing evidence." *In re Brown/Kindle/Muhammad*, 305 Mich App 623, 635; 853 NW2d 459 (2014) (citation and quotation marks omitted). "This Court reviews for clear error the trial court's factual findings and ultimate determinations on the statutory grounds for termination." *In re White*, 303 Mich App 701, 709; 846 NW2d 61 (2014). "The trial court's factual findings are clearly erroneous if the evidence supports them, but [this Court is] definitely and firmly convinced that it made a mistake." *Id*. at 709-710. "A reviewing court must defer to the special ability of the trial court to judge the credibility of witnesses." *In re LaFrance*, 306 Mich App 713, 723; 858 NW2d 143 (2014).

## B. ANALYSIS

Under MCL 712A.19b(3)(b)(*i*), (j), and (k)(*ii*), a trial court may terminate a respondent's parental rights if:

---

[3] The trial court did not terminate respondent's parental rights under MCL 712A.19b(3)(g). Accordingly, we will not consider respondent's arguments as they pertain to subsection (g).

(b) The child or a sibling of the child has suffered physical injury or physical or sexual abuse under 1 or more of the following circumstances:

(*i*) The parent's act caused the physical injury or physical or sexual abuse and the court finds that there is a reasonable likelihood that the child will suffer from injury or abuse in the foreseeable future if placed in the parent's home.

* * *

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

(k) The parent abused the child or a sibling of the child and the abuse included 1 or more of the following:

* * *

(*ii*) Criminal sexual conduct involving penetration, attempted penetration, or assault with intent to penetrate.

Although respondent contends that LL's original testimony lacks all credibility when viewed in conjunction with her recantation testimony, the trial court disagreed on remand. Therefore, deferring to the trial court's credibility determinations, we must also credit LL's original testimony. See *In re LaFrance*, 306 Mich App at 723. At trial, LL testified that when she was 13 years old, respondent touched her breasts and vagina with his hands and his penis, and then put his penis in her vagina. Therefore, the record supports a finding that a sibling of the children—LL—suffered sexual abuse, which included penetration. Further, given respondent's sexual abuse of LL, the trial court did not clearly err in finding that the minor children would be at risk of sexual abuse if returned to respondent's care. See *In re AH*, 245 Mich App 77, 84; 627 NW2d 33 (2001) (stating that under the doctrine of anticipatory neglect, how a parent treats one child is probative of how that parent may treat other children). Therefore, based on the record before us, we conclude that the trial court did not clearly err in terminating respondent's parental rights under MCL 712A.19b(3)(b)(*ii*), (j), and (k)(*ii*).

III. BEST INTERESTS

A. STANDARD OF REVIEW

Respondent next argues that the trial court erred in finding that termination of his parental rights was in the children's best interests. "The trial court must order the parent's rights terminated if the Department has established a statutory ground for termination by clear and convincing evidence and it finds from a preponderance of the evidence on the whole record that termination is in the children's best interests." *In re White*, 303 Mich App at 713. "We review for clear error the trial court's determination regarding the children's best interests." *Id*.

## B. ANALYSIS

The trial court should weigh all the evidence available to determine the children's best interests. To determine whether termination of parental rights is in a child's best interests, the court should consider a wide variety of factors that may include "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. [*In re White*, 303 Mich App at 713-714 (citations omitted.]

"[I]f the best interests of the individual children *significantly* differ, the trial court should address those differences when making its determination of the children's best interests." *Id*. at 715-716.

The referee did not clearly err in finding that termination of respondent's parental rights was in the children's best interests. The children were at risk of sexual abuse by respondent given his sexual abuse of LL. See *In re AH*, 245 Mich App at 84. Respondent argues that the trial court failed to consider his bond with the children. However, any bond between respondent and the children did not outweigh the need to protect the children from sexual abuse. Respondent also argues that the trial court failed to consider each child individually, but the referee's recommendation and report referred to each child separately, and, regardless, the referee was not required to consider each child's interests individually because there was no evidence that their interests differed significantly. See *In re White*, 303 Mich App at 715-716. All of the children had an interest in not being sexually abused by respondent. On this record, the trial court did not clearly err in finding termination in the children's best interests.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

## A. STANDARD OF REVIEW

Respondent finally argues that he is entitled to a new trial because his trial lawyer was ineffective because (1) he did not allow respondent to testify, (2) he failed to call witnesses who knew how respondent treated his children, (3) he failed to request a best interest hearing or introduce any best interests evidence, and (4) he failed to adequately cross examine LL to bring out inconsistencies in her testimony and to show that her testimony was perjured. "[T]he principles of effective assistance of counsel developed in the context of criminal law apply by analogy in child protective proceedings." *In re CR*, 250 Mich App 185, 197-198; 646 NW2d 506 (2001), overruled on other grounds by *In re Sanders*, 495 Mich 394; 852 NW2d 524 (2014) (citation and quotation marks omitted). Because respondent did not raise this issue below in a motion for a new trial or an evidentiary hearing, our review is limited to errors apparent from the record. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012).

## B. ANALYSIS

In *People v Pinkney*, 316 Mich App 450, 473; 891 NW2d 891 (2016), this Court explained that "[t]o prevail on an ineffective-assistance claim, a defendant must show that counsel's performance fell below an objective standard of reasonableness, and that the representation so prejudiced the defendant as to deprive him of a fair trial." (Citation and quotation marks omitted). Moreover, [e]ffective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *Id*. (citation and quotation marks omitted). "Because the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim." *People v Jackson (On Reconsideration)*, 313 Mich App 409, 432; 884 NW2d 297 (2015) (citation and quotation marks omitted).

Respondent argues that his lawyer was ineffective by refusing to allow him to testify at the termination hearing. At the hearing, however, respondent affirmed on the record that he understood that he had the right to testify and that he and his lawyer agreed that he would not testify. The record, therefore, does not support respondent's claim that his lawyer refused to allow him to testify.

Respondent also argues that his lawyer was ineffective for failing to call any witnesses on his behalf, including his mother and son, who knew how he treated the children and "their bond." Respondent also complains that trial counsel was ineffective for failing to request a best-interest hearing or present any best-interest evidence. "Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy, and this Court will not substitute its judgment for that of counsel regarding matters of trial strategy." *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002). Respondent has not presented an offer of proof of the witnesses' proposed testimony or the substance of any other evidence, and he also fails to explain how such evidence would have helped his case. Without an appropriate showing of the nature of the proposed testimony or any other evidence, respondent cannot overcome the presumption that his lawyer's decision not to call any witnesses or present other evidence was sound trial strategy.

Finally, respondent argues that his lawyer was ineffective for failing to adequately cross-examine LL to bring out her allegedly false and inconsistent testimony. Once again, the record does not support this claim. Respondent's lawyer cross-examined LL about the details of the sexual assault and her failure to tell her mother or brother about the assault. He also questioned her about her allegations that she was sexually abused by a 17-year-old boy in foster care and her initial failure to tell anyone about respondent's physical abuse. He further elicited LL's testimony that respondent took her to a "place" where there were doctors because she was cutting herself. Respondent fails to explain what testimony was inconsistent with statements LL made during her Kids-TALK interview. Respondent has not established that his lawyer's efforts to show that LL was making up the allegations were objectively unreasonable or inadequate. "A failed strategy does not constitute deficient performance." *People v Petri*, 279 Mich App 407, 412; 760 NW2d 882 (2008).

Respondent's claims of ineffective assistance are without merit.

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Michael J. Kelly
/s/ Douglas B. Shapiro