# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
January 11, 2018

Plaintiff-Appellee,

v

No. 335209
Saginaw Circuit Court

JASON DAMONTE WRENN,

LC No. 16-042123-FC

Defendant-Appellant.

Before: O'CONNELL, P.J., and HOEKSTRA and SWARTZLE, JJ.

PER CURIAM.

Following a jury trial, defendant appeals as of right his convictions of first-degree felony murder, MCL 750.316(1)(b), armed robbery, MCL 750.529, conspiracy to commit armed robbery, MCL 750.157a; MCL 750.529, felon in possession of a firearm, MCL 750.224f, and four counts of possession of a firearm during the commission of a felony, MCL 750.227b. Because the trial court did not err by denying defendant's request for an involuntary manslaughter instruction, we affirm.

In October of 2015, defendant killed the victim, Laquavis Cooper, by shooting him twice in the head at close range. The shooting occurred during a robbery in which defendant stole $120. Defendant, who was aware that Cooper had just cashed a check, borrowed a friend's gun to commit the robbery, stating that he intended to "scare" Cooper into giving him the money. When questioned by police, defendant told a variety of stories regarding the incident. First, he denied robbing or killing Cooper. Then, he claimed self-defense, stating that he shot Cooper after Cooper punched him. Finally, defendant claimed that the gun accidentally discharged. He told police that, when he pointed the gun, he thought his finger was on the trigger guard, but it was actually on the trigger and the gun "just went off." However, when asked to explain why he fired a second shot, defendant indicated that, after the first shot, "his whole life flashed before his eyes and he thought of his family, he knew the penalties involved" and "he couldn't go down for this." Notably, medical evidence established that Cooper was still alive when the second shot was fired and that either shot would have been fatal. Further, according to expert testimony, it took four pounds of pressure to activate the trigger on the gun in question. The jury convicted defendant as noted above. He now appeals as of right.

On appeal, defendant argues that the trial court erred by denying his request for a jury instruction on involuntary manslaughter as a necessarily included lesser offense of murder.

-1-

According to defendant, his explanation to police—i.e., that he fired the gun accidentally while mistakenly believing that his finger was on the trigger guard—could support the conclusion that his conduct amounted to mere gross negligence. In these circumstances, defendant contends that he was entitled to an involuntary manslaughter instruction and that the trial court's refusal to give this instruction violated his constitutional right to present a defense.

Defense counsel requested an instruction on involuntary manslaughter at trial, meaning that defendant's instructional argument has been preserved for our review. *People v Pinkney*, 316 Mich App 450, 470; 891 NW2d 891 (2016). "We review a claim of instructional error involving a question of law de novo, but we review the trial court's determination that a jury instruction applies to the facts of the case for an abuse of discretion." *People v Everett*, 318 Mich App 511, 528; 899 NW2d 94 (2017) (quotation marks and citation omitted). "A criminal defendant has the right to have a properly instructed jury consider the evidence against him." *People v Rodriguez*, 463 Mich 466, 472; 620 NW2d 13 (2000) (citation omitted). "[A] requested instruction on a necessarily included lesser offense is proper if the charged greater offense requires the jury to find a disputed factual element that is not part of the lesser included offense and a rational view of the evidence would support it." *People v Cornell*, 466 Mich 335, 357; 646 NW2d 127 (2002). "An appellate court must . . . review *all* of the evidence irrespective of who produced it to determine whether it provides a rational view to support an instruction on the lesser charge." *People v McMullan*, 488 Mich 922; 789 NW2d 857 (2010).

"Manslaughter is a necessarily included lesser offense of murder." *People v Gillis*, 474 Mich 105, 137; 712 NW2d 419 (2006). In particular, "the sole element distinguishing manslaughter and murder is malice." *Id.* at 138 (citation and quotation marks omitted). "Malice is defined as an act done with either an intent to kill, an intent to commit great bodily harm, or an intent to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result." *Id.* (quotation marks and citation omitted). "If the homicide was committed with malice, it is murder. If it was committed with a lesser mens rea of gross negligence or an intent to injure, and not malice, it is not murder, but only involuntary manslaughter." *Id.* (quotation marks and citation omitted). Because involuntary manslaughter is a lesser included offense of murder, when a defendant is charged with murder, a requested instruction on involuntary manslaughter "must be given if supported by a rational view of the evidence." *Id.* at 137 (quotation marks and citation omitted). Thus, in this case, defendant was entitled to an involuntary manslaughter instruction "only if a rational view of the evidence would have supported a finding" that Cooper's death was "caused by an act of gross negligence or an intent to injure, and not malice." *Id.* at 138.

A rational view of the evidence in this matter does not support such a finding, and the trial court did not err by denying defendant's request for an involuntary manslaughter instruction. Specifically, the evidence indicates that defendant planned an armed robbery. He borrowed a gun to "scare" Cooper, intending to steal the money that Cooper had in his possession after cashing a check. Consistent with this plan, defendant confronted the victim, pointed a gun at Cooper, and demanded money. Based on stippling marks on Cooper's body, experts opined that the gun was fired from a close range of 2 inches to 2 feet. Defendant then stole Cooper's money, fled the scene, and told police a variety of lies about his involvement in the crime. It is true that, in one of his versions of events, defendant claimed that he fired the gun accidentally by placing his finger on the trigger instead of the trigger guard. However, his assertion that the gun "just

went off" when he accidentally placed his finger on the trigger is belied by evidence that firing the gun required a certain amount of pressure. In any event, notwithstanding defendant's claim that he accidentally pulled the trigger, the fact remains that he deliberately pointed a loaded gun at the victim's head. The only rational conclusion to be drawn from defendant's series of intentional actions leading up to the shooting is that, at a minimum, defendant had "an intent to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result." *Id.* Cf. *McMullan*, 488 Mich at 923.

Moreover, even if it could be concluded that the first shot defendant fired was an act of gross negligence, we would nevertheless conclude that a rational view of the evidence did not support an involuntary manslaughter conviction in light of the fact that defendant fired a second shot. Undisputedly, Cooper was shot twice in the head. Medical evidence established that Cooper was still alive after the first shot. Further, defendant's statement to police makes plain that—after firing the first shot—he intentionally fired the second shot while the victim lay on the ground. According to defendant's statement, he saw his life flash before his eyes, he knew the penalties for his actions, and, not wanting to "go down" for the crime, he then fired a second shot. On this record, even if the first shot could be construed as an act of gross negligence, the second shot to Cooper's head was clearly done with malice.

In sum, on the facts of this case, defendant's actions clearly demonstrate malice, and no reasonable juror could conclude that defendant merely acted with gross negligence or an intent to injure without malice. See *McMullan*, 488 Mich at 923; *Gillis*, 474 Mich at 138-139. Because a rationale view of the evidence did not support a voluntary manslaughter instruction, the trial court did not err by denying defendant's request for an involuntary manslaughter instruction.[1] Additionally, given that a rational review of the evidence did not support an involuntary manslaughter instruction, the refusal to give this instruction did not prevent defendant from presenting a viable defense theory, and thus we also reject defendant's claim that the failure to give an involuntary manslaughter instruction denied him the right to present a defense. See *People v Kurr*, 253 Mich App 317, 327-328; 654 NW2d 651 (2002).

---

[1] Although we have concluded that the trial court did not err by refusing to give an involuntary manslaughter instruction, we note briefly that the failure to give such an instruction was not outcome determinative. "Failure to instruct on a lesser included offense undermines reliability in the verdict only when the evidence clearly supports the lesser included instruction, but the instruction is not given." *Everett*, 318 Mich App at 529 (quotation marks and citation omitted). "[A]n offense is clearly supported where there is substantial evidence to support it." *McMullan*, 488 Mich at 922. As we have discussed, there was far from substantial evidence in support of defendant's involuntary manslaughter claim, and, even assuming the trial court erred by failing to give this instruction, the failure to give this instruction did not undermine the reliability of the verdict. See *Everett*, 318 Mich App at 529-531.

Affirmed.

/s/ Peter D. O'Connell
/s/ Joel P. Hoekstra
/s/ Brock A. Swartzle