# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

TERREON TRASHUN SMITH,

Defendant-Appellant.

UNPUBLISHED
June 13, 2017

No. 331305
Ingham Circuit Court
LC No. 15-000090-FC

Before: SWARTZLE, P.J., and SAAD and O'CONNELL, JJ.

PER CURIAM.

Defendant, Terreon Smith, appeals by right his convictions of first-degree murder, MCL 750.316 (open murder), two counts of assault with intent to commit murder, MCL 750.83, carrying a concealed weapon (CCW), MCL 750.227, and possessing a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced him as a third-offense habitual offender, MCL 769.11, to serve concurrent terms of life in prison without parole for his first-degree murder conviction, 17½ to 50 years' imprisonment for each of his assault convictions, and 38 to 60 months' imprisonment for his CCW conviction, as well as a consecutive term of two years' imprisonment for his felony-firearm conviction. We affirm.

## I. FACTS

Terreon's convictions resulted from a drive-by shooting.

Gary Brown testified that he and Terreon had a "beef" that began about three weeks before the shooting. During the first altercation between Brown and Terreon, Terreon and Brown got into a fist fight. Terreon was with a group. Brown testified that he heard someone ask for a gun, Brown ran from the fight, and Brown then heard gunshots. The second altercation between the men occurred the night of the shooting. Brown testified that he was helping L.C. Wilson[1] provide security for a teen party at a Lansing home. LC testified that the homeowner hosted an adult party after the teen party. Terreon arrived at the party with Antwan Williams.

---

[1] L.C. Wilson was not related to Levon Wilson.

-1-

When Brown saw Terreon approach, Brown drew a gun, pointed it at Terreon, and told him to leave. Terreon and Antwan left the party.

Chris Jones testified that he and his friend Merza Mizori encountered Terreon, Antwan, Daryl Smith, and a man he did not know, at a Lansing area gas station. Jones saw the men get out of a truck. The man Jones did not know had a silver or chrome handgun with black grips. Terreon and Jones spoke. Mizori testified that Terreon asked him if he knew where Brown was.

Jones testified that he learned of the party at the gas station, and then he and Mizori went to the party. Jones testified that they arrived, they turned around in a nearby driveway attempting to find a place to park, and he saw a truck pull onto the street. Someone in the truck began shooting from the back driver's side window. Jones did not see who was shooting, but he recognized the gun and the truck from the gas station. Mizori testified that he saw Terreon shooting at Brown, who was outside the house where the party was, from the driver's side of the vehicle. Other witnesses testified about the vehicle and the gunfire, but none testified to seeing the shooter. Levon Wilson was shot and killed, and Macon Kimble was shot through the thigh.

Roderigious Williams testified that he spoke with Terreon two or three days after the shooting. Roderigious explained that Terreon, Antwan, and David Arrington arrived at Roderigious's house. While Roderigious and Terreon were alone on the porch, Roderigious asked Terreon what was going on. Terreon eventually responded, "I f***ed up." Terreon explained that "the boy wasn't supposed to be there . . . ."

## II. DETECTIVE TESTIMONY

Terreon argues that Lansing Police Department Detective Lee McCallister improperly commented on the credibility of witnesses, defense counsel's failure to object constituted ineffective assistance of counsel, and the trial court erred in admitting the testimony. Because we conclude that Detective McCallister did not improperly comment on the credibility of any specific witness, we disagree.

These issues are unpreserved. See *People v McCrady*, 244 Mich App 27, 29-30; 624 NW2d 761 (2000). Therefore, we review the issues for plain error. See *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Plain error occurs when there is (1) "error" (2) that was "clear or obvious" and (3) "affected substantial rights." *Id*. A defendant's substantial rights are affected when he is prejudiced such that the "error affected the outcome of the lower court proceedings." *Id*. Further, we will only reverse "when the plain, forfeited error resulted in the conviction of an actually innocent defendant" or "seriously affected the fairness, integrity or public reputation of judicial proceedings." *Id*. at 763-764 (internal quotations, alterations, and citations omitted). Finally, because the trial court did not hold an evidentiary hearing regarding the effectiveness of trial counsel, our review of the ineffective assistance of counsel claim "is limited to mistakes apparent from the record." *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012).

"A criminal defendant has the fundamental right to effective assistance of counsel." *Id*.; see US Const, Am VI; Const 1963, art 1, § 20. A defendant receives ineffective assistance of counsel if (1) defense counsel's performance fell below an objective standard of reasonableness

and (2) there is a reasonable probability that counsel's deficient performance prejudiced the defendant. *Strickland v Washington*, 466 US 668, 687-688; 104 S Ct 2052; 80 L Ed 2d 674 (1984).

A police officer's opinion testimony is admissible as a lay opinion, MRE 701, if the officer bases his or her opinion on direct perceptions rather than on a technical or scientific analysis. See *People v McLaughlin*, 258 Mich App 635, 657-658; 672 NW2d 860 (2003). Proper lay testimony includes testimony about general police procedure. *People v Bahoda*, 448 Mich 261, 281-282; 531 NW2d 659 (1995). However, in doing so, the officer may not indicate a belief that a witness testified truthfully, *id*., indicate a belief that a witness's story was verified, *id*., or comment on or provide an opinion about the credibility of other witnesses, *People v Buckey*, 424 Mich 1, 17; 378 NW2d 432 (1985). Rather, jurors must evaluate witness credibility. *People v Musser*, 494 Mich 337, 348-349; 835 NW2d 319 (2013).

In this case, Detective McCallister testified that he was part of the police department's cold case homicide squad. He stated that the shooting occurred in July 2012, other detectives were assigned to the case, the lead detective "was a member of the Michigan National Guard and her unit was deployed overseas" "around September of 2012," he was assigned to the case in October 2012, and he reviewed existing evidence of the shooting. The prosecutor asked Detective McCallister "what types of problems" he "ha[d] with actually untangling what had happened" the night of the shooting. In response, Detective McCallister explained

> the biggest problem that I had was here I had a pile of several witnesses, eye witnesses, who admit to being there, admit to being, you know, within feet of what happened. However, nobody was being honest. It was blatantly obvious to me in reviewing video recordings of these interviews that these people weren't— they weren't telling the truth. They were minimizing their activities and not providing the original investigators with what they actually saw and what knowledge that they did, in fact, have.

Detective McCallister further testified that he believed that the case was not truly cold and that "[t]his case still had some loose ends that we needed to pull on . . . ." Detective McCallister then described his investigation of the case. [2]

Eight eyewitnesses, including victim Kimble, testified at trial. In making the above, quoted comment, Detective McCallister did not indicate a belief that any specific witness testified truthfully, indicate a belief that any specific witness's story was verified, or comment on

---

[2] On appeal, Terreon argues generally that Detective McCallister improperly inflated Mizori's testimony by improperly denigrating eye witnesses' testimony. Terreon must include and specifically cite to facts from the record to support his argument. See MCR 7.212(C)(7). Terreon only cites the block quoted testimony above. Therefore, he abandoned any challenge to other portions of Detective McCallister's testimony. See *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009); *People v Jones (On Rehearing)*, 201 Mich App 449, 456-457; 506 NW2d 542 (1993).

or provide an opinion about the credibility of any other specific witness. Rather, the cited testimony concerned general police procedures. See *Bahoda*, 448 Mich at 281-282. Therefore, it is not apparent from the record that defense counsel performed deficiently in failing to object to Detective McCallister's testimony, and the trial court did not plainly err in admitting Detective McCallister's testimony.

## III. JURY INSTRUCTIONS

Next, Terreon argues that the trial court improperly issued an aiding and abetting instruction because the evidence presented at trial did not support a finding that he was involved in the shooting as an aider and abettor. We disagree.

We review claims of instructional error de novo. *People Martin*, 271 Mich App 280, 337; 721 NW2d 815 (2006), aff'd 482 Mich 851 (2008). We review the trial court's decision that a specific jury instruction applies to the facts of a case for an abuse of discretion. *People v Armstrong*, 305 Mich App 230, 239; 851 NW2d 856 (2014). A "trial court abuses its discretion when its outcome falls outside the range of principled outcomes." *Id*.

The jury instructions "must not exclude from jury consideration material issues, defenses or theories if there is evidence to support them." *People v Reed*, 393 Mich 342, 349-350, 224 NW2d 867 (1975). The trial court properly issues a jury instruction "if a rational view of the evidence supports the instruction." *Armstrong*, 305 Mich App at 240.

A trial court properly issues an aiding and abetting instruction when a prosecutor presents evidence that defendant may have either been a principal *or* an aider and abettor. *People v Smielewski*, 235 Mich App 196, 206-207; 596 NW2d 636 (1999). MCL 767.39 provides that "[e]very person concerned in the commission of an offense, whether he directly commits the act constituting the offense or procures, counsels, aids, or abets in its commission may hereafter be prosecuted, indicted, tried and on conviction shall be punished as if he had directly committed such offense." Accordingly, the Legislature has abolished the distinction between aiders and abettors and principals. *Smielewski*, 235 Mich App at 201-203.

In this case, a rational view of the evidence supports the trial court's decision to issue an aiding and abetting instruction. Brown testified that he and Terreon had a "beef" that began about three weeks before the shooting. Brown further testified that on the night of the shooting, Terreon arrived at the party, Brown pointed a gun at Terreon and told him to leave, and Terreon left. Jones testified that he saw Terreon at the gas station that same night, Terreon was "hyped," and Terreon was with someone who had a handgun. Mizori testified that Terreon asked if he had seen Brown. Jones testified that the gun and truck he saw at the gas station were involved in the shooting. Mizori and Eddie Williams testified that gunfire came from the truck and was directed at Brown. Mizori further identified Terreon as the shooter. However, multiple, other eyewitnesses testified that gun fire came from a vehicle, but they could not tell who was firing the gun or guns. Therefore, the jury could have concluded that Terreon either personally fired a gun, making him a principal, or was involved in planning and carrying out the shooting, making him an aider and abettor. Thus, the trial court did not abuse its discretion in concluding that an aiding and abetting instruction applied to the facts of Terreon's case.

## IV. OTHER ACTS EVIDENCE

Terreon argues in his brief filed pursuant to Michigan Supreme Court Administrative Order 2004-6, Standard 4, that the trial court abused its discretion and violated his rights to due process and a fair trial by admitting other acts evidence without weighing its probative value and prejudicial effect. We agree that the trial court erred, but conclude that the error does not warrant reversal.

We review de novo preliminary questions of law, including whether a trial court properly interpreted a rule of evidence. *People v Duncan*, 494 Mich 713, 722-723; 835 NW2d 399 (2013). We review preserved challenges to the trial court's evidentiary rulings for an abuse of discretion. *Id*.

MRE 404(b)(1) prohibits a party from introducing evidence of another party's other crimes, wrongs, or acts specifically to prove that person's character or propensity to engage in that type of action. MRE 404(b)(1). However, MRE 404(b)(1) is a rule of inclusion, *People v VanderVliet*, 444 Mich 52, 64; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994), which allows the admission of relevant other acts evidence offered for another purpose, such as proof of motive, intent, and identity.

Courts use a four step analysis to determine whether other acts evidence is admissible pursuant to MRE 404(b)(1). *VanderVliet*, 444 Mich at 74. First, a party must offer the evidence for a permissible purpose. *Id*. Second, the evidence must be relevant. *Id*. Third, the trial court must consider whether the evidence's probative value is substantially outweighed by a danger of unfair prejudice, such that it should be excluded under MRE 403. *Id*. Fourth, " 'the trial court shall, upon request, instruct the jury that the similar acts evidence is to be considered only for the proper purpose for which it was admitted.' " *Id*., quoting *Huddleston v United States*, 485 US 681, 691-692; 108 S Ct 1496; 99 L Ed 2d 771 (1988).

In this case, the prosecution offered other acts evidence of the two prior altercations between Terreon and Brown. The trial court determined that the prosecution offered the evidence for proper purposes and that evidence was relevant. Terreon argued that the evidence was substantially more prejudicial than probative, but the trial court did not weigh the probative value and prejudicial effect of the evidence under MRE 403. Accordingly, the trial court erred by failing to properly analyze the admissibility of the evidence because it did not complete the third step of the *VanderVliet* analysis.

However, Terreon has not established that the trial court committed an error of constitutional magnitude. The admission of other acts evidence does not violate a defendant's constitutional right to due process unless it renders a defendant's trial fundamentally unfair. See *Spencer v Texas*, 385 US 554, 560-564; 87 S Ct 648; 17 L Ed 2d 606 (1967); *People v Pinkney*, 316 Mich App 450, 477-478; 891 NW2d 891 (2016). The types of infractions that render a trial fundamentally unfair are very narrow but include admission of evidence that is "so extremely unfair that its admission violates fundamental conceptions of justice." *Dowling v United States*, 493 US 342, 352; 110 S Ct 668; 107 L Ed 2d 708 (1990) (internal quotation marks and citation omitted). A limiting instruction on the use of other acts evidence generally protects the defendant's interests in due process. See *Spencer*, 385 US at 560-564.

The other acts evidence plaintiff offered in Terreon's case concerned two other incidents between Brown and Terreon. Plaintiff offered the evidence for proper purposes, to show motive, intent, and identity. Plaintiff did not argue that Terreon should be convicted because the evidence showed he had a propensity to commit the charged crimes. Moreover, the trial court instructed the jury that it could only consider the other acts evidence to determine whether Terreon had a reason to commit the crime, specifically intended to murder Brown, or was one of the people who committed the crime. It instructed the jury not to consider the evidence "for any other purpose," including whether defendant was a bad person or likely to commit crimes. The instruction can minimize the evidence's prejudicial effect, see *People v Cameron*, 291 Mich App 599, 612; 806 NW2d 371 (2011), and we presume that these jurors followed these instructions, see *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008). Therefore, the trial court committed a nonconstitutional error.

Terreon failed to prove that this nonconstitutional error warranted reversal. A preserved, nonconstitutional error is grounds for reversal only if it affirmatively appears that it is "more probable than not that the error was outcome determinative." *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999). "Evidence presents the danger of unfair prejudice when it threatens the fundamental goals of MRE 403: accuracy and fairness." *People v Vasher*, 449 Mich 494, 501; 537 NW2d 168 (1995). Evidence's prejudicial effect can substantially outweigh its probative value when the evidence is only marginally probative and there is a danger that the trier of fact may give the evidence undue or preemptive weight, see *People v Blackston*, 481 Mich 451, 462; 751 NW2d 408 (2008), or will inject "considerations extraneous to the merits of the case, such as jury bias, sympathy, anger, or shock," *People v Danto*, 294 Mich App 596, 600; 822 NW2d 600 (2011). The trial court must weigh the evidence while considering "the availability of other means of proof." See *People v Starr*, 457 Mich 490, 498 n 9; 577 NW2d 673 (1998) (internal quotations and citations omitted).

We cannot conclude that the trial court's failure to specifically analyze the other acts evidence pursuant to MRE 403 warrants reversal because we cannot conclude that MRE 403 would bar the other acts evidence. The other acts evidence was more than marginally probative. Many eye witnesses could not identify the shooter. The other acts evidence provided evidence of identity, motive, and intent. Terreon does not point to evidence that the jury gave the other acts evidence preemptive weight, and the jury instruction discussed above minimized the evidence's prejudicial effect.

## V. RES GESTAE WITNESSES

Finally, Terreon raises multiple issues concerning res gestae witnesses in his Standard 4 brief. None warrant reversal.

Res gestae witnesses are persons who "witness[ed] some event in the continuum of the criminal transaction" whose testimony would "aid[] in developing a full disclosure of the facts at trial." See *People v Long*, 246 Mich App 582, 585; 633 NW2d 843 (2001).

First, Terreon argues that he was denied due process because his trial counsel was ineffective for failing to investigate and call five witnesses: Brown's brother and cousin, who Terreon claims were present for the first fight between him and Brown; Daryl, who Terreon

-6-

argues was present for the second altercation between Terreon and Brown; David Arrington, who Terreon claims was present for his conversation with Roderigious; and Antwan, who Terreon claims was present for the second altercation and his conversation with Roderigious.

Because no evidentiary hearing was held regarding Terreon's ineffective assistance of counsel claim, our review is limited to mistakes apparent from the record. *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009).[3]

The rights to counsel, due process, and a fair trial are intertwined. *Strickland*, 466 US at 684-685.

> The Sixth Amendment right to counsel exists, and is needed, in order to protect the fundamental right to a fair trial. The Constitution guarantees a fair trial through the Due Process Clauses, but it defines the basic elements of a fair trial largely through the several provisions of the Sixth Amendment, including the Counsel Clause . . . . [*Id.*]

As mentioned above, a defendant must show that his counsel's performance fell below an objective standard of reasonableness to sustain an ineffective assistance of counsel claim. *Id*. at 687-688. To show deficient performance, a defendant must overcome the strong presumption that defense counsel's performance constituted sound trial strategy. *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012). The decision to investigate or call witnesses can be a matter of trial strategy. *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008); *People v Swain*, 288 Mich App 609, 645-646; 794 NW2d 92 (2010). A defendant must also show that there is a reasonable probability that counsel's deficient performance prejudiced him. *Strickland*, 466 US at 687. "To establish prejudice, [a defendant] must show a reasonable probability that the outcome would have been different but for counsel's errors." *People v Grant*, 470 Mich 477, 486; 684 NW2d 686 (2004). A defendant cannot show prejudice from the failure to call a witness without some indication that a witness would have testified favorably for defendant. *People v Pratt*, 254 Mich App 425, 430; 656 NW2d 866 (2002).

Terreon failed to show that he suffered prejudice from his counsel's failure to call Brown's brother or cousin as witnesses because he points to no evidence in the record that Brown's brother or cousin would have testified favorably for Terreon. See *Id.*[4]

Terreon cannot show that counsel performed deficiently in failing to investigate or call Antwan or Daryl to testify regarding Terreon and Brown's second altercation. Jones testified

---

[3] This Court previously denied Terreon's motion to remand to the trial court for an evidentiary hearing. *People v Smith*, unpublished order of the Court of Appeals, entered March 3, 2017 (Docket No. 331305).

[4] We also note that Terreon's appellate counsel states in Terreon's primary brief on appeal that "the defense did not dispute the evidence of the two prior altercations between [Terreon] and Gary Brown" at trial.

that he saw Antwan and Daryl together in a vehicle with Terreon shortly before the drive-by shooting. Therefore, Antwan and Daryl were possible codefendants, and counsel may have made the strategic decision not to call them as witnesses because they may have implicated Terreon or invoked their Fifth Amendment rights not to testify. Further, Terreon cannot show prejudice because there is no indication in the record that Antwan or Daryl would have testified favorably for Terreon.

Finally, Terreon cannot show that counsel was deficient for failing to call Arrington and Antwan to discuss his conversation with Roderigious or that failure to call them prejudiced him. There is no indication in the record that these witnesses could dispute any part of the alleged confession. Rather, Roderigious testified that Arrington and Antwan left before Terreon made any incriminating admissions, and no one else was present during the confession.

Second, Terreon argues that the prosecution committed misconduct by failing to notify Terreon of these same, five res gestae witnesses pursuant to MCL 767.40a. We disagree.

Terreon did not preserve this argument. Therefore, we review his claim for plain error. *Carines*, 460 Mich at 763.

A prosecutor commits misconduct if his or her conduct denied the defendant a fair and impartial trial. *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). However, standing alone, prosecutorial misconduct is not constitutional error. *People v Blackmon*, 280 Mich App 253, 262, 269; 761 NW2d 172 (2008). Because Terreon alleges that the prosecutor's conduct violated a statutory right, Terreon asserts nonconstitutional error.

MCL 767.40a provides that the prosecution has a continuing duty to disclose all known res gestae witnesses:

> (1) The prosecuting attorney shall attach to the filed information a list of all witnesses known to the prosecuting attorney who might be called at trial and all res gestae witnesses known to the prosecuting attorney or investigating law enforcement officers.

> (2) The prosecuting attorney shall be under a continuing duty to disclose the names of any further res gestae witnesses as they become known. . . .

The prosecution's duty consists of informing the defendant of "all known witnesses and those it discovers," indicating which witnesses it will call at trial, and providing reasonable assistance to produce those witnesses it does not call. *People v Burwick*, 450 Mich 281, 297; 537 NW2d 813 (1995). The prosecution has no duty to disclose witnesses that it is unaware of before trial. *Id*. at 295.

Terreon argues that the prosecution should have provided res gestae notice about Brown's brother and cousins. Brown testified *at trial* that he had his brother and his cousins with him during his first confrontation with Terreon. There is no indication in the record that the prosecution knew that Brown's brother and cousins were present before this trial testimony. Therefore, the prosecution had no duty to disclose the witnesses.

-8-

As noted above, Terreon argues that Daryl and Antwan were res gestae witnesses who could have testified regarding Terreon and Brown's second altercation. However, Terreon provides no information about what testimony they could offer or that they would testify favorably for Terreon. Therefore, Terreon has not established that any failure to disclose the witnesses affected the outcome of the lower court proceeding, as is required to establish plain error affecting substantial rights. See *Carines*, 460 Mich at 763. Similarly, Terreon has not established that any failure to disclose constituted nonconstitutional error. See *Lukity*, 460 Mich at 495-496.

Again, Terreon argues that Antwan and Arrington were res gestae witnesses who could have testified regarding his alleged confession to Roderigious. However, Roderigious testified that he and Terreon were alone on the porch when he asked Terreon about the shooting and Terreon made incriminating admissions. Therefore, Terreon fails to establish the predicate of this argument, i.e., that Antwan and Arrington witnessed the alleged confession.

Third, Terreon argues that he received ineffective assistance of counsel because his counsel failed to object to this prosecutor misconduct. Counsel need not advance meritless arguments. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). Because Terreon has not established any error in the prosecution's disclosure of Brown's brother, Brown's cousin, Arrington, or Antwan, in part, he cannot establish that trial counsel rendered ineffective assistance. Additionally, because Terreon cannot establish that the failure to disclose Daryl and Antwan, in part, prejudiced him, see *Grant*, 470 Mich at 486; *Pratt*, 254 Mich App at 430, he cannot establish that the failure to object to their disclosure rendered ineffective assistance.

We affirm.

/s/ Brock A. Swartzle
/s/ Henry William Saad
/s/ Peter D. O'Connell