# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

TRAVELL NICOLAS-ALFONZO HENRY,

        Defendant-Appellant.

UNPUBLISHED
September 19, 2017

No. 331326
Wayne Circuit Court
LC No. 15-007469-01-FC

Before: O'BRIEN, P.J., and JANSEN and MURRAY, JJ.

PER CURIAM.

Defendant appeals as of right his conviction, following a jury trial, of first-degree felony murder, MCL 750.316(1)(b), for which he was sentenced to life imprisonment without parole. We affirm.

## I. FACTS AND PROCEEDINGS

Defendant's conviction arises from the shooting death of Ronald Ford III on August 23, 2015. The prosecution's theory at trial was that Ford, a marijuana dealer, was shot and robbed of his marijuana during a transaction that defendant had arranged and attended. Allen Nathaniel Thompson, a 16-year-old juvenile at the time of the offense, was also charged in the matter.[1]

Defendant had arranged marijuana sales in the past between Ford and defendant's acquaintances. Because Ford did not want to sell marijuana to strangers, defendant would accompany new buyers to their meetings with Ford. On the date of Ford's murder, defendant and Thompson were both residential students at the Job Corps campus in Detroit. Thompson asked defendant to arrange a marijuana sale between Ford and Thompson's brother, Tyvair Wilkins. Defendant and Thompson left the campus that day without permission by climbing over a perimeter fence. They traveled by bus to the Dickerson and Promenade area, where they were to meet Wilkins to complete the transaction with Ford. Ford was fatally shot inside his

---

[1] Thompson was convicted, following a jury trial, of second-degree murder, MCL 750.317. This Court subsequently affirmed Thompson's conviction. *People v Thompson*, unpublished opinion per curiam of the Court of Appeals, issued August 15, 2017 (Docket No. 335399).

vehicle during the transaction.  Defendant and Thompson returned to the Job Corps campus with two backpacks, marijuana, and a scale taken from Ford's vehicle.

Using text messages found on Ford's cellular telephone, the police linked defendant to the shooting as he had arranged to meet with Ford, communicating with Ford by text messaging, regarding quantities of drugs in the hours leading up to the murder.  After defendant was charged, he agreed, with the assistance of counsel, to voluntarily give the police a written statement explaining his role in the matter.  Defendant admitted that he set up the marijuana sale between Ford and Wilkins, but denied shooting Ford or having any knowledge that Wilkins or Thompson intended to rob or shoot Ford.  Defendant testified to this version of events at trial. After defendant was convicted, he filed a motion for a new trial on the basis that trial counsel was ineffective for allowing defendant to give a statement to the police and to testify at trial, and for failing to call as witnesses Thompson, Wilkins, or the unnamed husband of a neighborhood witness, Jonetta Stewart ("Mr. Stewart").  After conducting a *Ginther*[2] hearing, the trial court denied his motion.

## II.  INEFFECTIVE ASSISTANCE OF COUNSEL

On appeal, defendant argues that his trial counsel was ineffective for allowing defendant to give a statement to the police and to testify at trial, and for not calling Mr. Stewart as a witness.  We disagree.

"Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002).  We review the trial court's factual findings for clear error, but then decide whether the facts support the conclusion that the defendant was denied the effective assistance of counsel. *Id.* "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012).  "To demonstrate ineffective assistance of counsel, a defendant must show that his or her attorney's performance fell below an objective standard of reasonableness under prevailing professional norms and that this performance caused him or her prejudice." *People v Nix*, 301 Mich App 195, 207; 836 NW2d 224 (2013).  To demonstrate prejudice, the defendant must establish that "it is reasonably probable that the results of the proceeding would have been different had it not been for counsel's error." *People v Frazier*, 478 Mich 231, 243; 733 NW2d 713 (2007).  "This Court does not second-guess counsel on matters of trial strategy, nor does it assess counsel's competence with the benefit of hindsight." *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012).  In *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012), the Michigan Supreme Court recognized that trial counsel must undertake "reasonable investigations" during the course of representation:

> Yet a court cannot insulate the review of counsel's performance by calling it trial strategy.  Initially, a court must determine whether the "strategic choices [were] made after less than complete investigation," and any choice is "reasonable

---

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

precisely to the extent that reasonable professional judgments support the limitations on investigation." [*Strickland v Washington*, 466 US 668, 690-691; 104 S Ct 2052; 80 L Ed 2d 674 (1984)]. Counsel always retains the "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id.*

"Decisions regarding . . . whether to call or question witnesses are presumed to be matters of trial strategy." *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999). "[F]ailure to call witnesses only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense." *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004). "A particular strategy does not constitute ineffective assistance of counsel simply because it does not work." *People v Matuszak*, 263 Mich App 42, 61; 687 NW2d 342 (2004). Also, a defendant has the burden of establishing the factual predicate of his claim of ineffective assistance of counsel. *People v Hoag,* 460 Mich 1, 6; 594 NW2d 57 (1999).

We first address defendant's argument challenging trial counsel's decision to not call Mr. Stewart as a witness at trial. The record reflects that trial counsel was aware that during the course of their investigation, the police had spoken to a woman who lived near the scene of the shooting, Jonetta Stewart, who heard the shooting and saw some men remove items from Ford's car, but was unable to identify the men involved. Aware that multiple police efforts to contact Mr. Stewart were not fruitful, trial counsel explained at the *Ginther* hearing that he did not want to independently seek out a witness who might "solidify" the identification of defendant. Defendant argues that this explanation should be rejected because trial counsel failed to contact Stewart to ascertain what he would have said. Defendant speculates that Mr. Stewart would not have given incriminating testimony, reasoning that the prosecution would have called him as a witness if this were true. Defendant acknowledges, however, that he does not know what testimony Mr. Stewart would have actually given.

As an initial matter, defendant fails to show that trial counsel's performance fell below an objective standard of reasonableness. *Nix*, 301 Mich App at 207. For example, defendant has not overcome the strong presumption that trial counsel's decision to not call Mr. Stewart as a witness was the product of sound trial strategy. *Rockey*, 237 Mich App at 76. Defendant has also not demonstrated that Mr. Stewart would have been a cooperative witness providing favorable testimony to his defense if trial counsel had in fact contacted him and obtained a statement. As noted above, defendant bears the responsibility of establishing the factual predicate for his claim. *Hoag*, 460 Mich at 6. Put simply, there is nothing in the record to lead us to conclude, under these circumstances, that trial counsel's decision to not contact Mr. Stewart was anything but the exercise of reasonable professional judgment. *Trakhtenberg*, 493 Mich at 52.

Moreover, defendant has also not demonstrated that the decision not to call Mr. Stewart as a witness at trial was prejudicial to his defense. *Nix*, 301 Mich App at 207. Put simply, defendant has not provided an affidavit or other offer of proof that Mr. Stewart's testimony could have provided a substantial defense. *Dixon*, 263 Mich App at 398. Defendant's contention that the prosecution would have called Mr. Stewart if Mr. Stewart's testimony would have been inculpatory is likewise based on speculation. Detroit Police Detective Laura Manzella testified that after multiple diligent attempts during the course of her investigation of Ford's murder, she

-3-

was not successful in speaking with Mr. Stewart as he did not respond to her. Accordingly, there is no indication that the prosecution was aware what information Mr. Stewart could provide. Mr. Stewart was also not listed on the prosecution's witness list. Moreover, ample record evidence established defendant's presence at the scene of Ford's murder, that he had been in contact with Ford to set up the marijuana sale, and that he and Thompson traveled together from Job Corps to meet Ford. Defendant himself testified to these facts, and defendant also testified that he approached Ford in his vehicle after he was shot and checked his pulse. Therefore, even if Mr. Stewart testified that Wilkins or Thompson shot Ford and took his drugs, this would not have undermined the reasonable inference that defendant acted in concert with them as an aider and abettor, MCL 767.39.[3] Additionally, Mr. Stewart would not have been able to offer any testimony concerning defendant's knowledge of Thompson's and Wilkins's plans, or defendant's intent to act in concert with them. Moreover, Jonetta Stewart's testimony indicated that Mr. Stewart saw "guys running through the back," indicating that he might have seen defendant, Wilkins, and Thompson all running the same direction after the shooting. Put simply, it is highly unlikely Mr. Stewart's testimony would have been exculpatory for defendant.[4]

Defendant also argues that trial counsel's performance was constitutionally infirm where trial counsel advised defendant to give the police a statement without obtaining any consideration in exchange. He further argues that trial counsel's advice to give a statement and to testify on his own behalf at trial amounted to ineffective assistance of counsel because defendant's testimony actually bolstered the prosecution's case against him. We are not persuaded that trial counsel's performance fell below an objective standard of reasonableness. *Nix*, 301 Mich App at 207.

Although defendant argues that trial counsel should have negotiated for him to receive a benefit from the prosecution in exchange for his police interview, he does not explain what this benefit might have been. The record reflects that defendant asserted his innocence at the outset, ultimately rejecting an offer from the prosecution for him to plead guilty to second-degree murder and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b(1). Further, the defense theory at trial was that defendant planned the marijuana sale transaction between Ford and Wilkins without any knowledge that Wilkins planned to shoot

---

[3] MCL 767.39 provides, in pertinent part, as follows:

> Every person concerned in the commission of an offense, whether he directly commits the act constituting the offense or procures, counsels, aids, or abets in its commission may hereafter be prosecuted, indicted, tried and on conviction shall be punished as if he had directly committed such offense.

[4] The present case is thus distinguishable from *People v Ackley*, 497 Mich 381, 389; 870 NW2d 858 (2015), cited by defendant, where the Michigan Supreme Court concluded that the defendant's trial counsel was constitutionally infirm for "failing to investigate and . . . secure an expert witness who could [ ] testify in support of the defendant's theory" that the victim's injuries were accidental, and to prepare counsel to "counter the prosecution's expert medical testimony."

-4-

Ford and steal his marijuana. Defendant does not suggest any other means of advancing this theory without his own testimony. Similarly, if defendant had not given a statement to the police during their investigation, and had not testified in a similar fashion at trial, the police and jury would not have heard defendant's side of the story: that defendant considered Ford to be his friend, that he had previously arranged numerous other marijuana transactions in which Ford was not set up for robbery, and that he did not intend for Ford to be robbed or killed.

Defendant next argues that his testimony and statement bolstered the prosecution's case, because without his explanation that he was acting as a middleman in a drug sale, there would have been no evidence that he was aiding Thompson and Wilkins. This argument is unpersuasive because the prosecutor introduced substantial evidence from which the jury could infer that the trio acted together. For example, defendant and Ford exchanged text messages in the hours leading up to the murder to plan the drug sale between Ford and Wilkins. Evidence at trial established that defendant and Thompson traveled together to and from Job Corps, and that they brought back with them Ford's backpacks and drugs following his murder. Cellular telephone evidence placed defendant in the area of the shooting contemporaneously with a call to 911 reporting the shooting. This evidence, taken together, firmly supported the inference that defendant acted together with Thompson and Wilkins.[5] Defendant's testimony further supported this inference, but any negative effect must be weighed against the advantage of explaining to the jury that defendant had no intention of aiding a robbery or homicide. Waiving his right to silence was a risk that did not pay off for defendant, but this does not establish that trial counsel was incompetent in advising him of the advantages and disadvantages of testifying. Trial counsel's advice was not objectively unreasonable merely because it may not have been successful. *Matuszak*, 263 Mich App at 61.

Defendant further argues that speaking to the police led them to Brandy Hill, who testified about defendant's actions and behavior in the time period following Ford's murder. According to defendant, without his statement to the police, he might not have been convicted. Defendant further alleges that the jury's request for clarification on the law concerning aiding and abetting indicates that the jury was uncertain about his involvement in the robbery. This argument is entirely speculative. First, Hill's testimony did not directly inculpate defendant. While defendant argues that her testimony portrayed him in a bad light, suggesting that he was unsympathetic about Ford's death, this potentially negative side effect of giving the statement

---

[5]In *People v Pinkney*, 316 Mich App 450, 471; 891 NW2d 891 (2016), this Court recently set forth the following principles of law regarding conviction under a theory of aiding and abetting:

> The general rule is that, to convict a defendant of aiding and abetting a crime, a prosecutor must establish that "(1) the crime charged was committed by the defendant or some third person; (2) the defendant performed acts or gave encouragement that assisted the commission of the crime; and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time that [the defendant] gave aid and encouragement." [*Id*. (citations and quotation marks omitted).]

must be weighed against the potential benefits. Defendant conceded at the *Ginther* hearing that he and trial counsel had discussed whether defendant should testify and that he was aware that it was his decision whether to testify. Defendant also acknowledged that, in his view, the prosecution's evidence did not accurately portray what actually happened and that his testimony was necessary for the jury to hear "my side of the story, and my life, what actually took place."

Moreover, trial counsel testified at the *Ginther* hearing that from the first day he met defendant, defendant was adamant and insistent about giving the police a statement to put forth his version of events. Trial counsel noted that he advised defendant to wait to give a statement until a proffer letter was tendered, so that any statement defendant made would inure to defendant's benefit. Trial counsel also testified it was necessary for defendant to testify at trial to explain why he was at the scene of the shooting, and that he and defendant collaborated to devise this trial strategy. On this record, defendant has not established that trial counsel's performance was objectively unreasonable. *Nix*, 301 Mich App at 207.

### III. CONCLUSION

Defendant's claims that he was denied the effective assistance of counsel at trial are without merit.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Kathleen Jansen
/s/ Christopher M. Murray