# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DON ANDRE BROWN,

Defendant-Appellant.

UNPUBLISHED
January 25, 2018

No. 334300
Wayne Circuit Court
LC No. 15-008009-01-FC

Before: CAMERON, P.J., and SERVITTO and GLEICHER, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of second-degree murder, MCL 750.317, felon in possession of a firearm, MCL 750.224f, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was sentenced, as a third habitual offender, MCL 769.11, to 40 to 60 years' imprisonment for the second-degree murder conviction, to 5 to 10 years' imprisonment for the felon in possession of a firearm conviction, and two years' imprisonment for the felony-firearm conviction. We affirm in part and reverse and remand in part.

## I. FACTUAL BACKGROUND

In the early morning hours on September 6, 2015, near Meldrum Street in Detroit, defendant shot and killed Khary Smith and Demetrius Gatson. The evening preceding the shooting, Khary, Demetrius, Lennard Gatson, and several other members of the Gatson family were gathered at Chene Park in Detroit with defendant's half-sister, Shaquila Jones, and her friends. Many at the park agreed to meet up at a house on Meldrum Street. On the way to the house, Shaquila picked up defendant in her van. The descriptions of the events that transpired on Meldrum Street vary by witness. However, it is undisputed that at one point, defendant was standing outside the van on the sidewalk with Demetrius, Khary, Lennard, Shaquila, and another friend named Byron Tate. At some point, defendant pulled out a handgun and shot Khary five times and Demetrius three times. Defendant jumped in the passenger seat of the van and ordered Shaquila to get in and drive away. As the two drove away, the van struck Khary and dragged him approximately a mile. Shaquila testified at trial that she dropped defendant off at his house and then drove to her friend's house, where she left the van. She claimed the van was stolen and later found burned at another location.

-1-

## II. SUFFICIENCY OF THE EVIDENCE

Defendant claims there is insufficient evidence to sustain his second-degree murder conviction for the death of Khary. Defendant asserts that the jury's verdicts are inconsistent because his acquittal of first-degree murder, MCL 750.316, and assault with intent to murder, MCL 750.83, with regard to Demetrius and Lennard, indicate the jury believed his testimony and position that he acted in self-defense. Thus, it is inexplicable that the jury should have convicted defendant of the second-degree murder of Khary premised on the same factual circumstances and evidence. In addition, defendant contends that the prosecution failed to prove beyond a reasonable doubt that defendant's shooting Khary was the cause of death and not the dragging of Khary's body beneath the undercarriage of the vehicle driven by Shaquila. We disagree.

In *People v Solloway*, 316 Mich App 174, 180-181; 891 NW2d 255 (2016) (citations omitted), this Court explained:

> This Court reviews de novo challenges to the sufficiency of the evidence. This Court must determine whether the evidence was sufficient to justify a rational trier of fact's conclusion that the evidence proved the essential elements of the crime beyond a reasonable doubt. In determining whether sufficient evidence was presented to support a conviction, the reviewing court will not interfere with the fact-finder's role of deciding the credibility of the witnesses. All conflicts in the evidence must be resolved in favor of the prosecution, and circumstantial evidence and all reasonable inferences drawn therefrom can constitute satisfactory proof of the crime[.]

As discussed by this Court in *People v Bergman*, 312 Mich App 471, 487; 879 NW2d 278 (2015) (citations and quotation marks omitted):

> The elements of second-degree murder are (1) a death, (2) the death was caused by an act of the defendant, (3) the defendant acted with malice, and (4) the defendant did not have lawful justification or excuse for causing the death. Malice is defined as the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm. The prosecution is not required to prove that the defendant actually intended to harm or kill. Instead, the prosecution must prove the intent to do an act that is in obvious disregard of life-endangering consequences.

Based on the testimony of the medical examiner and defendant's admissions, there is no dispute that Khary was killed or that defendant shot Khary five times. Khary's autopsy also revealed multiple "avulsions, lacerations, abrasions [and] contusions" consistent with his body having been dragged beneath the undercarriage of a moving vehicle. The medical examiner testified that one of the gunshot wounds was "through and through," entering Khary's left upper abdomen and going through his "ribs [and] liver" and exiting "out into the right upper abdomen." The penetrating gunshot wound entered the back of Khary's left arm, exited through the front of that arm, and then "re-entered on the side of the left chest and proceeded into the lungs, the heart, the diaphragm and the liver where a bullet was recovered and retained." While there were also

-2-

injuries consistent with being dragged under the van, when asked to pinpoint Khary's cause of death, the medical examiner opined that Khary could have expired within seconds or minutes from any of the injuries or a combination of the injuries. Further, when asked whether any of the gunshot wounds could have caused "imminent death" to Khary, the medical examiner identified the two gunshot wounds that entered into Khary's chest and abdomen as possibilities, but could not definitively ascertain how quickly Khary's death occurred, indicating it could have been mere seconds or several minutes. The medical examiner responded affirmatively when asked, "So multiple gunshot wounds contributed to his death as well as the dragging?" In addition, all of the witnesses, with the exception of defendant, denied that anyone other than defendant was armed. Even defendant did not claim Khary was armed or had engaged in any threatening, assaultive, or intimidating behavior. Further, it was acknowledged that defendant was legally precluded from possessing a firearm.

Overall, the evidence was sufficient to sustain defendant's conviction of second-degree murder. Khary died as a result of multiple gunshot wounds inflicted by defendant. Regardless of the fact that Khary's body was dragged beneath the undercarriage of Shaquila's van, the medical examiner opined that the gunshot wounds were a contributing factor to Khary's death or possibly the cause of death. In addition, there was testimony at trial that, at defendant's direction, Shaquila drove away from the scene and ran over Khary, dragging him for at least a mile. Defendant was aware that Khary's body was beneath the vehicle, yet did nothing and continued to have the van proceed. Contrary to defendant's claim, there was sufficient evidence at trial to demonstrate he acted with malice and without a legal justification for the killing. Thus, there was sufficient evidence to sustain his second-degree murder conviction.

Defendant also claims that his second-degree murder conviction is not sustainable because it is contrary to the jury's acquittal on the charge of first-degree murder as to Demetrius and the charge of assault with intent to murder as to Lennard. Specifically, defendant contends that the jury's acceptance of his claim of self-defense with regard to the other charges precluded the jury from convicting him of second-degree murder, thus rendering the verdicts inconsistent. Defendant's contention lacks merit.

Initially, as recognized in *People v Putman*, 309 Mich App 240, 251; 870 NW2d 593 (2015):

> Even assuming inconsistency, defendant is not entitled to relief because inconsistent verdicts within a single jury trial are permissible and do not require reversal. [J]uries are not held to any rules of logic nor are they required to explain their decisions. Although defendant complains of a purported inconsistency, he makes no effort to establish that the jury was confused, that they misunderstood the instructions, or that the jury engaged in an impermissible compromise. Absent such circumstances, inconsistent verdicts within a single jury are permissible, and defendant is not entitled to reversal of his convictions. [Citations and quotation marks omitted.]

Further, defendant fails to recognize the factual and evidentiary differences in the charges, thereby obviating defendant's claim of inconsistency or an "incongruous verdict." With regard to Khary's death, there was no evidence that Khary was armed or engaged in any form of

threatening acts toward defendant. As such, the jury could have rejected defendant's self-defense claim. There was also testimony at trial that defendant knew Khary's body was being dragged beneath the undercarriage of Shaquila's van, yet he failed to instruct her to stop or seek help. In contrast, the jury may have acquitted defendant of the first-degree murder of Demetrius if the jury accepted as credible defendant's testimony that he was acting in self-defense when he shot Demetrius because he believed Demetrius was armed and threatening him. Similarly, if the jury accepted defendant's assertion that he did not shoot at Lennard, it explains his acquittal of the charge of assault with intent to murder.

## III. INSTRUCTIONAL ERROR

Defendant claims that the trial court erred when it granted the prosecution's request for a jury instruction on second-degree murder and denied defendant's request for an instruction on voluntary manslaughter. Defendant argues that sufficient provocation was shown to support the voluntary manslaughter instruction. We disagree.

"This Court reviews de novo claims of instructional error." *People v Martin*, 271 Mich App 280, 346; 721 NW2d 815 (2006), aff'd 482 Mich 851 (2008). Specifically: [J]ury instructions that involve questions of law are also reviewed de novo. But a trial court's determination whether a jury instruction is applicable to the facts of the case is reviewed for an abuse of discretion. *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006) (citations and quotation marks omitted).

It is well recognized that "[a] criminal defendant is entitled to have a properly instructed jury consider the evidence against him, and the jury instructions must include all the elements of the charged offenses and any material issues, defenses, and theories that are supported by the evidence[.]" *People v Pinkney*, 316 Mich App 450, 471; 891 NW2d 891 (2016) (citations and quotation marks omitted). Specifically, a "trial court may issue an instruction to the jury if a rational view of the evidence supports the instruction." *Id.* (citation and quotation marks omitted). In addition, "[e]ven if the instructions are somewhat imperfect, reversal is not required as long as they fairly presented the issues to be tried and sufficiently protected the defendant's rights." *Id.* (citation omitted).

First, the evidence at trial supported the trial court's instruction on second-degree murder. As noted, the elements of second-degree murder are: "(1) a death, (2) the death was caused by an act of the defendant, (3) the defendant acted with malice, and (4) the defendant did not have lawful justification or excuse for causing the death." *Bergman*, 312 Mich App at 487 (citations and quotation marks omitted). Evidence existed demonstrating Khary's death and that the actions of defendant caused the death, based on the testimony of the medical examiner and defendant's acknowledgement that he discharged his weapon multiple times at Khary and Demetrius. Evidence also existed to fulfill the requirement that defendant acted with malice, which "is defined as the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *Id.* Defendant testified that he discharged his weapon toward Demetrius and Khary, and Shaquila testified that defendant continued firing until he was out of bullets. The medical examiner documented that Khary sustained five gunshot wounds. Further, the fact that defendant ordered Shaquila to drive him away from the scene, even after

-4-

knowing that Khary's body was beneath the undercarriage of the vehicle, is evidence sufficient to demonstrate malice. Despite defendant's claim that he was acting in self-defense, there is no evidence to suggest that Khary was armed or posed any imminent threat to defendant. There was no evidence that Khary had a weapon or that he verbally or physically behaved in a manner that threatened defendant's safety or intimidated him. Thus, because second-degree murder is a necessarily included lesser offense of first-degree premeditated murder, and a rational view of the evidence supported the trial court's instruction of second-degree murder, the trial court did not err in providing the instruction. *People v Cornell*, 466 Mich 335, 358 n 13; 646 NW2d 127 (2002).

Second, defendant claims the trial court erred when it denied his request for an instruction on voluntary manslaughter. As recognized in *People v Mendoza*, 468 Mich 527, 540; 664 NW2d 685 (2003), "A necessarily lesser included offense is an offense whose elements are completely subsumed in the greater offense." Specifically:

> Regarding voluntary manslaughter, both murder and voluntary manslaughter require a death, caused by defendant, with either an intent to kill, an intent to commit great bodily harm, or an intent to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result. However, the element distinguishing murder from manslaughter— malice—is negated by the presence of provocation and heat of passion. Thus, we conclude, the elements of voluntary manslaughter are included in murder, with murder possessing the single additional element of malice. [*Id.* (citations omitted).]

In denying defendant's request for a voluntary manslaughter instruction, the trial court explained there was no evidence that defendant acted with "provocation" or in the "heat of passion." Although defendant claimed at trial that he was acting in self-defense, he did not claim that he was "provoked" by Demetrius, Khary, or anyone else. Significantly, the verbal exchanges that purportedly occurred between defendant, Demetrius, Lennard, and Tate were insufficient to constitute provocation.

"When a defendant is charged with murder, the trial court must give an instruction on voluntary manslaughter if the instruction is supported by a rational view of the evidence." *People v Mitchell*, 301 Mich App 282, 286; 835 NW2d 615 (2013) (citation and quotation marks omitted). "To prove that a defendant committed voluntary manslaughter, one must show that the defendant killed in the heat of passion, the passion was caused by adequate provocation, and there was not a lapse of time during which a reasonable person could control his passions." *Id.* (citation and quotation marks omitted). "[F]or the provocation to be adequate it must be that which would cause a reasonable person to lose control." *Id.* at 287 (citation and quotation marks omitted). To support a voluntary manslaughter instruction typically requires some evidence that defendant was motivated to act by some type of physical provocation, *id.* at 287-288, such as a circumstance where the "victim started using profanity and then swung a baseball bat and struck defendant." *Id.* Verbal insults do not generally constitute sufficient provocation for an instruction on voluntary manslaughter. See *People v Pouncey*, 437 Mich 382, 391-392; 471 NW2d 346 (1991) (finding that insulting words, standing alone, typically are not adequate

provocation, and that the victim and defendant engaging in a "verbal fracas" did not constitute adequate provocation).

Here, none of the witnesses, including defendant, testified that Khary engaged defendant verbally in any form of comment or conversation. In addition, other than Khary's presence in the vicinity of Demetrius, there is no evidence that Khary engaged in or threatened any form of physical contact with defendant, and there is no evidence that Khary was armed with a weapon. Defendant admitted at trial that he was not intimidated by comments made by any of the men because he believed they were intoxicated. Further, there is no evidence that defendant was impeded from entering the van or leaving the premises. Rather, according to defendant's testimony, while he believed that Byron had a weapon, defendant did not assert that he actually determined or observed anyone with a weapon. At trial, defendant did not assert that his actions were provoked by Khary or the others; he instead claimed self-defense.

Because there was no evidence of provocation, the trial court did not err in refusing to instruct the jury on voluntary manslaughter. A rational view of the evidence did not support the provision of the instruction based on that absence of provocation. At most, defendant was verbally taunted or insulted by Demetrius, Lennard, and Byron. Defendant admitted that he did not feel intimidated by their comments, attributing the comments to the ingestion of alcohol by these individuals. Although defendant believed Byron had a weapon, this is not sufficient to conclude that defendant was provoked to the extent that a reasonable person would have lost control and acted in the heat of passion. *Mitchell*, 301 Mich App at 286. No physical altercation occurred and there was no evidence that any weapon was discharged other than defendant's. Moreover, the jury received an instruction on self-defense, which it necessarily rejected as to Khary's death. Consequently, the trial court correctly denied the request by defendant for an instruction on voluntary manslaughter.

## IV. SENTENCING ERRORS

Defendant claims he is entitled to resentencing because the trial court sentenced him as a third habitual offender instead of a second habitual offender. Defendant also challenges the trial court's scoring of OV 14, claiming it improperly engaged in judicial fact-finding when it determined that defendant was a leader in the criminal enterprise. Finally, defendant claims that his sentence of 40 to 60 years' imprisonment for his second-degree murder conviction comprises cruel or unusual punishment.

"A party shall not raise on appeal an issue challenging the scoring of the sentencing guidelines or challenging the accuracy of information relied upon in determining a sentence that is within the appropriate guidelines sentence range unless the party has raised the issue at sentencing, in a proper motion for resentencing, or in a proper motion to remand filed in the court of appeals." *People v McChester*, 310 Mich App 354, 357; 873 NW2d 646, 648 (2015) (citation omitted). Defense counsel objected to the scoring of OV 14 at sentencing, thereby preserving that issue for appellate review. However, there was no objection as to sentencing defendant as a third habitual offender or on the basis that defendant's sentence constituted cruel or unusual punishment. Therefore, these aspects of the issue on appeal are unpreserved.

For preserved sentencing errors, "the trial court's findings of fact are reviewed for clear error and must be supported by a preponderance of the evidence." *Id.* at 358. "Clear error is present when the reviewing court is left with a definite and firm conviction that an error occurred." *Id.* (citation and quotation marks omitted). However, "[w]hether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "When calculating the sentencing guidelines, a court may consider all record evidence, including the contents of a [presentence investigation report], plea admissions, and testimony presented at a preliminary examination." *McChester*, 310 Mich App at 358. "A Sixth Amendment challenge presents a question of constitutional law that this Court reviews de novo." *People v Lockridge*, 498 Mich 358, 373; 870 NW2d 502 (2015).

In contrast, unpreserved issues are reviewed for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "To avoid forfeiture of an unpreserved claim, the defendant bears the burden of establishing that: (1) error occurred, (2) the error was plain, i.e., clear or obvious, and (3) the plain error affected substantial rights. Reversal is warranted only when the plain, unpreserved error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity, or public reputation of the judicial proceedings independent of the defendant's innocence." *People v Everett*, 318 Mich App 511, 526-527; 899 NW2d 94 (2017) (citations and quotation marks omitted).

First, defendant claims the trial court erred in sentencing him as a third habitual offender because he was charged as a second habitual offender. The prosecution concedes that this constituted error, entitling defendant to resentencing as a second habitual offender. In accordance with MCL 769.13:

> (1) In a criminal action, the prosecuting attorney may seek to enhance the sentence of the defendant . . . by filing a written notice of his or her intent to do so within 21 days after the defendant's arraignment on the information charging the underlying offense or, if arraignment is waived, within 21 days after the filing of the information charging the underlying offense.

> (2) A notice of intent to seek an enhanced sentence filed under subsection (1) shall list the prior conviction or convictions that will or may be relied upon for purposes of sentence enhancement. The notice shall be filed with the court and served upon the defendant or his or her attorney within the time provided in subsection (1). The notice may be personally served upon the defendant or his or her attorney at the arraignment on the information charging the underlying offense, or may be served in the manner provided by law or court rule for service of written pleadings. The prosecuting attorney shall file a written proof of service with the clerk of the court.

It is undisputed that the prosecution complied with the requirements of MCL 769.13 in seeking enhancement of defendant's sentence as a second habitual offender, but that no notice was provided to support enhancement of defendant's sentence as a third habitual offender.

Defendant was erroneously sentenced as a third habitual offender, affecting his sentencing guidelines. Defendant was sentenced to a minimum of 480 months for his second-degree murder conviction, which was within the guidelines range of 225 to 562 months for a third habitual offender. This sentence exceeds the guidelines range of 225 months to 468 months for a second habitual offender, entitling defendant to resentencing. At sentencing, the trial court acknowledged the advisory nature of the guidelines. We note that the trial court is not precluded from imposing the same sentence if it determines that the sentence was reasonable despite the acknowledged error regarding defendant's habitual offender status. *Lockridge*, 498 Mich at 392 (ruling that sentencing courts are not "*bound* by the applicable sentencing guidelines range," but that they must "continue to consult the applicable guidelines range and take it into account when imposing a sentence."). If the trial court imposes the same sentence, which would constitute a departure from the guidelines, it should establish a record and "justify the sentence imposed in order to facilitate appellate review." *People v Steanhouse*, 500 Mich 453, ___; 902 NW2d 327, 335 (2017) (citation omitted).

Next, defendant challenges the assessment of 10 points for OV 14 premised on judicial fact-finding. Under MCL 777.44(1)(a), 10 points are assessed for OV 14 when "[t]he offender was a leader in a multiple offender situation." In making this determination, "[t]he entire criminal transaction should be considered when scoring this variable." MCL 777.44(2)(a). The trial court determined that defendant acted as the leader, given that he was the acknowledged shooter and ordered Shaquila to take the driver's seat and flee from the crime scene. The evidence supports the assessment of 10 points for this variable.

Defendant argues that the scoring of OV 14 was wrongly premised on judicial fact-finding. As discussed in *People v Biddles*, 316 Mich App 148, 158; 896 NW2d 461 (2016):

> The fact that a trial court engaged in judicial fact-finding is not relevant to the inquiry into an evidentiary challenge. The constitutional evil addressed by the *Lockridge* Court was not judicial fact-finding in and of itself, it was judicial fact-finding in conjunction with *required* application of those found facts for purposes of increasing a *mandatory* minimum sentence range. *Lockridge* remedied this constitutional violation by making the guidelines *advisory*, not by eliminating judicial fact-finding.

The *Lockridge* Court specifically indicated that its "holding . . . does nothing to undercut the requirement that the highest number of points possible *must* be assessed for all OVs, whether using judge-found facts or not." *Lockridge*, 498 Mich at 392 n 28. Thus, judicial fact-finding is proper, as long as the guidelines are advisory only, *Biddles*, 316 Mich App at 160-161, which the trial court recognized.

Further, defendant recognizes that the assessment of 10 points for OV 14 did not increase defendant's minimum sentence, which the trial court noted was advisory and not mandatory. Should the same conditions remain true when defendant is resentenced as a second habitual offender, resentencing is not necessarily mandated if the scoring of OV 14 does not alter the minimum guidelines range. "Where a scoring error does not alter the appropriate guidelines range, resentencing is not required." *Biddles*, 316 Mich App at 163, citing *People v Francisco*, 474 Mich 82, 89 n 8; 711 NW2d 44 (2006).

Finally, defendant claims that his sentence of 40 to 60 years' imprisonment for the second-degree murder conviction comprises cruel or unusual punishment. As recognized in *People v Benton*, 294 Mich App 191, 204; 817 NW2d 599 (2011), "[t]he Michigan Constitution prohibits cruel *or* unusual punishment, [Const 1963, art 1, § 16], whereas the United States Constitution prohibits cruel *and* unusual punishment, [US Const Am VIII]. If a punishment passes muster under the state constitution, then it necessarily passes muster under the federal constitution." (Citation and quotation marks omitted.) "In deciding if punishment is cruel or unusual, this Court looks to the gravity of the offense and the harshness of the penalty, comparing the punishment to the penalty imposed for other crimes in this state, as well as the penalty imposed for the same crime in other states." *People v Bowling*, 299 Mich App 552, 557-558; 830 NW2d 800 (2013) (citation omitted).

It is premature to consider whether defendant's punishment is cruel or unusual because defendant is entitled to resentencing as a second habitual offender. Therefore, it remains to be determined whether, upon resentencing, defendant's sentence will be proportionate or consistent with the appropriate guidelines range. Thus, because defendant is entitled to resentencing as a second habitual offender, his claim that his current sentence comprises cruel or unusual punishment is moot because of the possibility of an altered sentence. By definition, "a moot case is a case which seeks to get a judgment on a pretended controversy when in reality there is none, or to get a decision in advance about a right before it has been actually asserted or contested[.]" *People v Davis*, 29 Mich App 443, 467; 185 NW2d 609 (1971) (citation omitted), opinion adopted *People v Bercheny*, 387 Mich 431, 435; 196 NW2d 767 (1972).

We affirm defendant's convictions, but reverse the sentence and remand to the trial court for resentencing as a second habitual offender. We do not retain jurisdiction.

/s/ Thomas C. Cameron
/s/ Deborah A. Servitto
/s/ Elizabeth L. Gleicher