# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

WILLIAM FREDERICK WHATELEY,

      Defendant-Appellant.

UNPUBLISHED
December 11, 2018

No. 339255
Wayne Circuit Court
LC No. 17-002406-01-FH

Before: M. J. KELLY, P.J., and METER and O'BRIEN, JJ.

PER CURIAM.

Defendant, William Frederick Whateley, appeals as of right his jury-trial conviction of second-degree arson, MCL 750.73(1). Defendant was sentenced as a fourth-offense habitual offender, MCL 769.12, to 18 to 30 years' imprisonment. We affirm.

## I. EVIDENTIARY ERRORS

Defendant raises several claims of evidentiary error. We review for an abuse of discretion a trial court's decision to admit or exclude evidence. *People v Bynum*, 496 Mich 610, 623; 852 NW2d 570 (2014). "Preliminary questions of law, such as whether a rule of evidence or statute precludes the admission of particular evidence, are reviewed de novo . . . ." *Id*. Necessarily, a trial court abuses its discretion when it admits evidence that is inadmissible as a matter of law. *Id*. To the extent that we must determine whether an evidentiary ruling denied defendant due process, our review is de novo. See *People v Fackelman*, 489 Mich 515, 524; 802 NW2d 552 (2011).

### A. CROSS-EXAMINATION OF COMPLAINANT

Defendant argues that the trial court erred by precluding defense counsel from questioning the complainant about defendant's ties to the geographic area in which the arson occurred. Defendant contends that counsel was trying to show that it was not unusual for defendant to have been in the area in question. Having reviewed the record, we conclude that the trial court erred by ruling that this line of questioning was not relevant under MRE 401. The questioning had some tendency to undercut the prosecution's theory that defendant engaged in certain stalking-type behavior, which in turn was intended to show that defendant had motive to commit the charged offense. Nevertheless, defendant is not entitled to relief because he cannot

-1-

show that "it is more probable than not that the [preserved] error was outcome determinative." *People v Lukity*, 460 Mich 484, 496; 596 NW2d 607 (1999).[1]

There was substantial evidence to show that defendant started a fire at a mobile home previously owned by his former girlfriend Elisa Maldonado such that defendant cannot show that the trial court's evidentiary ruling had an impact on the outcome of the proceeding. Evidence showed the presence of an accelerant at the fire scene, and an expert testified that the fire was deliberately started. Witness testimony indicated that defendant drove a green minivan. A witness testified that, on the day of the fire, she saw a green minivan parked near the mobile home where the fire was started. The witness later, while the fire was underway, saw the green minivan near the exit of the trailer park. The witness could not identify defendant as the driver of the van, but she stated that the driver of the van was smiling and laughing as he exited the trailer park. Shortly after the fire, police impounded defendant's minivan and found an empty gas can and a lighter inside the van.

In addition, Maldonado testified that, after she ended her relationship with defendant, defendant sent her nearly 600 text messages. Heather Woodard, Maldonado's daughter, who lived next to Maldonado, also testified that defendant relayed threatening messages to her (Woodard); according to Woodard, on one occasion, defendant threatened to set Maldonado's mobile home on fire.

Given the evidence admitted, defendant has not shown entitlement to relief because it is not more probable than not that evidence that defendant had some ties to the area would have affected the verdict.

## B. RECORDED TELEPHONE CALL

Next, defendant argues that the trial court erred by admitting a recording of a telephone call that he made while he was incarcerated awaiting trial at the Wayne County Jail. Defendant argues that a sentence in the recording violated his due-process rights. This argument lacks merit.

At one point in the recording, defendant stated, "god forbid if they make me plead guilty to this arson." It is this particular sentence with which defendant takes issue. Defendant also stated in the call that if he pleaded guilty, he would "tell them what I did" because "Elisa asked me to do it," and he stated that he hoped she would "be my friend." All these statements, viewed in a group for context, were admissible. See, generally, MRE 801(d)(2). Defendant appears to be arguing that the reference to pleading guilty in the recording was unfairly prejudicial. MRE 403 provides that admissible evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." "The 'unfair prejudice' language of MRE 403 refers to the tendency of the proposed evidence to adversely affect the objecting party's

---

[1] To the extent defendant may be intending to argue as much, we decline to rule that the harmless-error standard for this issue should be the standard for constitutional, as opposed to nonconstitutional, errors.

position by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock." *People v Cameron*, 291 Mich App 599, 611; 806 NW2d 371 (2011) (citations and some quotation marks omitted). "Moreover, admission of [e]vidence is unfairly prejudicial when . . . [the danger exists] that marginally probative evidence will be given undue or preemptive weight by the jury." *Id*. (citation and quotation marks omitted).

The probative value of the evidence was not outweighed by the danger of unfair prejudice. The evidence was probative of defendant's guilt in that it tended to show that defendant had a motive to commit the offense. Indeed, in connection with the discussion about possibly pleading guilty, defendant referred to the reason why he would have started the fire— i.e., so that Maldonado would remain his friend. Defendant's statement about being "forced" to plead guilty did not show that he was in fact being threatened or coerced into admitting guilt, but tended to show that defendant was attempting to convince the person on the other end of the line that he did not commit the crime. Therefore, reference to a hypothetical plea agreement did not occur in the context of actual plea negotiations and introduction at trial was not unfairly prejudicial. The evidence did not "inject[] considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock." *Id*. Moreover, contrary to defendant's argument on appeal, there was no danger that the evidence eroded the presumption of innocence. The trial court instructed the jury on the presumption of innocence and the prosecution's burden of proof. See *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008) (noting that "jurors are presumed to follow their instructions"). The trial court did not err in admitting the telephone call and the evidence did not deny defendant due process. See *People v Toma*, 462 Mich 281, 294; 613 NW2d 694 (2000) (noting that "[i]t is well settled that the right to assert a defense may permissibly be limited by 'established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence' ") (citation omitted).

## C. TEXT MESSAGES

At trial, the prosecution had Maldonado read aloud 20 text messages that defendant sent to her after she ended her relationship with defendant. Before trial, defendant objected to admission of the text messages on grounds that the evidence was not admissible under MRE 404(b) and that the evidence was more prejudicial than probative under MRE 403. The trial court held that the evidence was admissible. The trial court reasoned that the evidence was not "prior bad acts," but rather was evidence of "the relationship between the parties which is necessary in order to show a number of things, opportunity and particularly motive and intent."

On appeal, defendant argues that the evidence was inadmissible under MRE 404(b) and MRE 403 and that the erroneous admission of the evidence denied him due process. These arguments lack merit.

Generally, evidence of prior bad acts "is not admissible to prove the character of a person in order to show action in conformity therewith." MRE 404(b)(1). However, evidence of other bad acts may be admissible to show "motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident." MRE 404(b)(1). In *People v VanderVliet*, 444 Mich 52, 55; 508 NW2d 114 (1993), amended on other grounds

445 Mich 1205 (1994), the Michigan Supreme Court set forth the following four-part test that governs the admissibility of other-acts evidence under MRE 404(b):

> First, that the evidence be offered for a proper purpose under Rule 404(b); second, that it be relevant under Rule 402 as enforced through Rule 104(b); third, that the probative value of the evidence is not substantially outweighed by unfair prejudice; fourth, that the trial court may, upon request, provide a limiting instruction to the jury.

The text messages were offered for a proper purpose under MRE 404(b) and were relevant under MRE 402. Specifically, the text messages were relevant to show that defendant had a motive to start the fire. The theme of the text messages, viewed as a whole, showed that defendant was upset with Maldonado after she ended her relationship with him. Defendant's messages supported that defendant had a motive to start the fire: to exact revenge on Maldonado for her refusal to restart their relationship. In a criminal prosecution, evidence of motive is always relevant. *People v Pinkney*, 316 Mich App 450, 468; 891 NW2d 891 (2016), rev'd on other grounds 501 Mich 259 (2018).

In addition, the probative value of the text messages was not substantially outweighed by the danger of unfair prejudice. MRE 403. The text messages were not unfairly prejudicial. The text messages did not "stir such passion as to divert the jury from rational consideration of" defendant's guilt or innocence of the charged offense. See *Cameron*, 291 Mich App at 611-612. The evidence was highly relevant of something other than defendant's character in that it showed defendant had a motive to start the fire. Further, the trial court provided a limiting instruction and instructed the jury on the presumption of innocence. See *Unger*, 278 Mich App at 235.

The trial court did not abuse its discretion by admitting the text messages and did not deny defendant due process.

## II. CONFRONTATION CLAUSE

Next, defendant argues that the trial court violated his right of confrontation when it permitted a police officer to testify about the results of a report that contained GPS coordinates from defendant's cellular telephone.

Whether the trial court's evidentiary ruling deprived a defendant of his right of confrontation involves a question of constitutional law that we review de novo. *Fackelman*, 489 Mich at 524. An unpreserved constitutional issue is reviewed for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

At trial, a police officer testified that police seized defendant's cellular telephone after obtaining a warrant. The telephone was sent to the Michigan State Police; the Michigan State Police retrieved data from the phone, put the data onto a disc, and returned the disc to local police. The testifying officer explained that GPS coordinates on defendant's telephone showed that it had been near the location of the fire. However, the officer could not determine a date or a time that the telephone was in that location.

We conclude that defendant is correct that the testimony about the results of the cellular telephone analysis violated the Confrontation Clause; however, the plain error did not affect defendant's substantial rights.

"The United States Supreme Court has held that the introduction of out-of-court testimonial statements violates the Confrontation Clause; thus, out-of-court testimonial statements are inadmissible unless the declarant appears at trial or the defendant has had a previous opportunity to cross-examine the declarant." *People v Nunley*, 491 Mich 686, 698; 821 NW2d 642 (2012). The officer's testimony about the GPS coordinates contained such statements. See, e.g., *Melendez-Diaz v Massachusetts*, 557 US 305, 310; 129 S Ct 2527; 174 L Ed 2d 314 (2009). Nevertheless, the testimony did not affect defendant's substantial rights in that he cannot show that the error impacted the outcome of the lower-court proceedings. See *Carines*, 460 Mich at 763.

The testimony had minimal probative value and was not prejudicial because the officer did not know the day or the time that the telephone was near Maldonado's home, and there was evidence that defendant was previously at Maldonado's home during the course of their relationship. Defendant cannot show that evidence of the GPS data impacted the outcome of the lower-court proceedings, and he is not entitled to relief. See *id*.

III. SUFFICIENCY OF THE EVIDENCE

Next, defendant contends that there was insufficient evidence to support his conviction of second-degree arson. A defendant's challenge to the sufficiency of the evidence is reviewed de novo. *People v Henderson*, 306 Mich App 1, 8; 854 NW2d 234 (2014). When analyzing a claim of insufficient evidence, this Court views the evidence in the light most favorable to the prosecution to determine "whether any rational trier of fact could have found that the essential elements of the crime charged were proven beyond a reasonable doubt." *People v Lundy*, 467 Mich 254, 257; 650 NW2d 332 (2002). "[C]ircumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *People v McKinney*, 258 Mich App 157, 165; 670 NW2d 254 (2003) (citation and quotation marks citation omitted). "It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002).

Defendant was convicted of second-degree arson under MCL 750.73(1), which provides:

> Except as provided in [MCL 750.72[2]], a person who willfully or maliciously burns, damages, or destroys by fire or explosive a dwelling, regardless of whether it is occupied, unoccupied, or vacant at the time of the fire or explosion, or its contents, is guilty of second degree arson.

---

[2] MCL 750.72 proscribes first-degree arson and was not at issue in this case.

The trial court instructed the jury consistent with MCL 750.73(1), and defined "dwelling" to include a mobile home.

There was substantial evidence that would allow a rational jury to conclude beyond a reasonable doubt that defendant committed second-degree arson. Evidence showed the presence of an accelerant at the fire scene, and an expert testified that the fire was deliberately started. Witness testimony showed that defendant drove a green minivan. A witness testified that, on the day of the fire, she saw a green minivan parked between Woodard's and Maldonado's mobile homes. The witness later saw the green minivan near the exit of the trailer park after the fire started. The witness could not identify defendant as the driver of the van, but she stated that the driver of the van was smiling and laughing as he exited the trailer park. Shortly after the fire, police impounded defendant's minivan and found an empty gas can and a lighter inside the van. In addition, Maldonado testified that, after she ended her relationship with defendant, defendant sent her nearly 600 text messages. The text messages tended to show that defendant had a motive to commit the offense. Woodard testified that defendant threatened to set Maldonado's mobile home on fire.

In light of all the evidence, there is no basis for reversal.

IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Finally, in a Standard 4 brief, defendant argues that he was denied the effective assistance of trial and appellate counsel. Whether defendant was denied the effective assistance of counsel presents a mixed question of fact and constitutional law. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). A trial court's findings of fact, if any, are reviewed for clear error, while constitutional issues are reviewed de novo. *Id*. at 579. In cases such as the instant case in which there was no evidentiary hearing held, this Court's review is limited to mistakes apparent on the record. *People v Hurst*, 205 Mich App 634, 641; 517 NW2d 858 (1994).

To establish ineffective assistance of trial counsel, a defendant must show that (1) counsel rendered assistance that "fell below the objective standard of reasonableness" and (2) there is a "reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different[.]" *Toma*, 462 Mich at 302-303 (citation and quotation marks omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001) (citation and quotation marks omitted).

A criminal defendant also has the right to the effective assistance of appellate counsel in his or her first appeal as of right. See *People v Caston*, 228 Mich App 291, 304; 579 NW2d 368 (1998). This Court applies the same test for ineffective assistance of appellate counsel as it does for trial counsel: a defendant must show that his or her appellate counsel's "decision not to raise a claim . . . fell below an objective standard of reasonableness and prejudiced his [or her] appeal." *People v Uphaus (On Remand)*, 278 Mich App 174, 186; 748 NW2d 899 (2008).

Defendant contends that appellate counsel was ineffective because he did not perform a proper review of the "complete record." In support of this argument, defendant claims that appellate counsel sent him correspondence indicating that he did not have a transcript dated May

10, 2017. However, defendant attaches correspondence showing that appellate counsel in fact located the transcript in question. The transcript is part of the lower court record, and defendant fails to articulate how appellate counsel should have used the transcript to raise an additional claim on appeal. Accordingly, defendant has not shown that appellate counsel's performance was deficient under an objective standard of reasonableness.[3]

Next, defendant argues that trial counsel was ineffective when "permitting invalid charging instruments to secure proceedings." But defendant does not offer any rationale to support his contention that any of the charging documents were "invalid" or "unlawful." "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). By failing to present any argument to support his contention that there were improper charging instruments, defendant has abandoned this issue. See *id*. Moreover, we have reviewed the charging instruments and they do not contain any apparent errors.[4]

Affirmed.

/s/ Michael J. Kelly
/s/ Patrick M. Meter
/s/ Colleen A. O'Brien

---

[3] Defendant's argument is less than clear, but to the extent defendant may also be arguing that counsel did not review a June 2017 sentencing transcript, once again defendant does not articulate how counsel should have used this transcript to raise any issues on appeal.

[4] Defendant also appears to be arguing that appellate counsel erred by failing to adequately raise an issue regarding "fabricated/falsified" charging documents, but again, defendant does not provide any rationale or support for this allegation of fabrication.